Vicki STRONG, Plaintiff,

v.

ARKANSAS BLUE CROSS AND BLUE SHIELD, INC., Defendant.

Bertha THOMPSON and Loretta Wilson, Plaintiffs,

v.

ARKANSAS BLUE CROSS AND BLUE SHIELD, INC., Defendant.

Juanita DONAHUE, Plaintiff,

v.

ARKANSAS BLUE CROSS AND BLUE SHIELD, INC., Defendant.

Carolyn Juarez NORTH, Plaintiff,

v.

ARKANSAS BLUE CROSS AND BLUE SHIELD, INC., Defendant.

Bobbie J. JONES, Plaintiff,

v.

ARKANSAS BLUE CROSS AND BLUE SHIELD, INC., Defendant.

Nos. LR–74–C–173, LR–74–C–282, LR–76–C–149, LR–76–C–231 and LR–76–C–244.

United States District Court, E. D. Arkansas W. D.

Sept. 5, 1980.

Philip Kaplan, John Bilheimer and Pamela Walker, Little Rock, Ark., for plaintiffs.

Richard M. Kobdish, Jr., and Arnold E. Perl, Young & Perl, P. C., Memphis, Tenn., R. Lawrence Ashe, Jr., Atlanta, Ga., Jimmie Patton, Little Rock, Ark., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROY, District Judge.

The above–captioned cases have been previously transferred from the dockets of individual District Judges for the Eastern District of Arkansas and consolidated for trial and coordinated pretrial proceedings. Each of the cases involves allegations of discriminatory employment practices. Each of the complaints alleges discrimination based on race or sex or both. The jurisdiction of the District Court has been invoked pursuant to the remedial provisions of Title VII of the Civil Rights Act of 1964, as amended, and its jurisdictional counterpart, 28 U.S.C. § 1343(3) and (4). On June 7 and 8, 1979, this Court conducted an evidentiary hearing which was limited to a consideration of the issues raised by the plaintiffs' motion for class certification and the defendant's opposition to class certification. Based on a review of the transcript of the testimony presented at the hearing, the exhibits, the extensive briefs which have been submitted by the respective parties, the proposed findings and objections thereto, and the depositions and other discovery which have been utilized by the parties throughout these proceedings, the following Findings of Fact and Conclusions of Law are hereby submitted, pursuant to the provisions of Rule 52(a) of the Federal Rules of Civil Procedure, as the Court's memorandum of decision with respect to the plaintiffs' motion for class certification.[1]

1. The reasons for the regrettable delay in the disposition of the plaintiffs' motion for class certification are essentially threefold. First, the preparation and analysis of the transcript of the testimony presented at the hearings on June 7 and 8, 1979, was time consuming. The transcribed testimony of the proceedings on June 7 and 8 is in two volumes and consists of 410 typewritten pages. Secondly, analysis of the mass of statistical data, data which do not lend themselves to speedy review, as well as a number of depositions and answers to interrogatories, has contributed to the delay. Thirdly, changes in the court's support personnel have been a contributing factor. The Court realizes that it is obliged, by virtue of the mandate embodied in the provisions of Rule 23(c)(1) of the Federal Rules of Civil Procedure, to resolve

## I.

### SUMMARY OF THE PARTIES' CONTENTIONS

The plaintiffs contend that this action should be certified as a class action. The plaintiffs, citing decisions rendered prior to the United States Supreme Court's decision in *East Texas Motor Freight v. Rodriquez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1971), have forcefully argued that suits alleging discrimination based upon class characteristics such as race or sex are inherently, or by their very nature, class actions. The plaintiffs have also argued that they have met the requirements of Rule 23 of the Federal Rules of Civil Procedure, the requirements of demonstrating numerosity, commonality, typicality and adequacy of representation. The plaintiffs have further argued that the Court should not consider the major portion of the defendant's evidence since it is relevant only to the merits of the alleged claims of discrimination rather than the determination of whether a class should be certified. Lastly, the plaintiffs have intimated that the defendant's "evidence on the merits" establishes that blacks and women have been systematically discriminated against inasmuch as they have been relegated to lower paying clerical positions by virtue of the defendant's employment practices.

The defendant contends that the statistical evidence establishes that it has not discriminated, particularly on any class basis. The defendant relies upon statistical evidence to support its assertion that it employs larger percentages of blacks and females than are available in the experienced civilian work force encompassed by the Little Rock Standard Metropolitan Statistical Area. Simply stated, the defendant contends that the statistical evidence refutes the plaintiffs' contention that a class of victims of racial and sexual discrimination exists. The defendant also challenges the

ability of the named plaintiffs to adequately represent the interests of putative class members. The defendant suggests that the named plaintiffs are inadequate class representatives because of conflicts of interest among the plaintiffs and the members of the class they seek to represent; the named plaintiffs have little knowledge of the claims of other alleged class members; the named plaintiffs have little knowledge with respect to their potential liability for costs; the plaintiffs do not have adequate financial resources to protect the interests of putative class members, to litigate class claims, or to fund the notices to potential class members; and the named plaintiffs have been less than diligent in the prosecution of the class action aspects of this litigation. Next, the defendant has contended that the plaintiffs should be required to show at least some probability of succeeding on the merits with regard to class claims of discrimination since the plaintiffs are, as a practical matter, "judgment proof" in terms of ability to pay costs and the consequences of an adverse resolution of the class action determination would have an impact upon the "defendant's wholly innocent policyholders and service beneficiaries" since they would bear the expense, either through increased premiums, reduced benefits, or both.

## II.

### FINDINGS OF FACT

1. All of the named plaintiffs are black females.

2. All of the named plaintiffs, with the exception of plaintiff Vicki Strong, have been employed by defendant Arkansas Blue Cross and Blue Shield, Inc.

3. Plaintiff Vicki Strong is the only named plaintiff who applied for employment with the defendant and who was not hired by the defendant.

class action issues "as soon as practicable" after the commencement of a suit which presents class action issues. The foregoing reasons are offered not as an excuse for the delay but as an explanation of it. Hopefully,

with the adoption last year of streamlined procedures for resolving class action issues, delays in disposition will not be a recurring problem in the future.

4. Arkansas Blue Cross and Blue Shield, Inc., is an Arkansas nonprofit corporation which is engaged in the business of underwriting medical and health care risks for individual and group policyholders.

5. Arkansas Blue Cross and Blue Shield, Inc., has its principal place of business in Little Rock, Arkansas. The defendant employs several hundred people within its various divisions and departments.

6. Arkansas Blue Cross and Blue Shield, Inc., hereinafter referred to as "BCBS," has utilized the Urban League for the Greater Little Rock Area as a source for obtaining black applicants or prospective black employees. The Urban League is a recognized source of a predominantly black applicant pool.

7. Plaintiff Vicki Strong learned of an opening in the defendant's Personnel Department through an announcement which the defendant had listed with the Urban League.

8. In response to the job announcement indicated above plaintiff Strong sent BCBS her resumé in the fall of 1971.

9. Plaintiff Strong's resumé did not indicate her race.

10. Plaintiff Strong had no actual or personal contact with BCBS. The two times plaintiff Strong did communicate with BCBS were by telephone. On each occasion plaintiff Strong spoke to Joanne Bush, a female employee of the defendant. Plaintiff Strong believes that Ms. Bush is black.

11. Plaintiff Strong was never interviewed by BCBS.

12. Plaintiff Strong does not know how many applications BCBS received in connection with the position for which she applied. Approximately 100 applications were received by BCBS for the particular position.

13. Plaintiff Strong does not know how many other applicants for the position for which she applied were not interviewed. The defendant only interviewed a few of the applicants rather than all of them. This procedure does not, however, appear to be unusual under the circumstances.

14. Plaintiff Strong does not know how many white or male persons were not interviewed for the position which she sought with the defendant.

15. Plaintiff Strong does not know whether her treatment differed from that received by a number of whites and males who applied for the position she sought with the defendant.

16. Plaintiff Strong does not have any personal knowledge of the race or sex of the person which BCBS selected for the job for which she applied.

17. Plaintiff Strong does not know whether the person selected by BCBS was better qualified than she. BCBS filled the position sought by plaintiff Strong with a white male who had a degree in Personnel Management and extracurricular honors in Management.

18. Plaintiff Strong has not sought employment with BCBS since November or December of 1971. She obtained employment in January 1972 at a salary level which provides her with little financial incentive to pursue this action.

19. Plaintiff Strong's discrimination charge submitted to the EEOC was based on race.

20. Plaintiff Strong knows of no one other than herself whom she believes has been unfairly treated by defendant because of their race.

21. Plaintiff Strong knows of no one other than herself whom she believes has been unfairly treated by BCBS because of their sex.

22. Plaintiff Strong has very little in terms of financial resources to devote to the prosecution of this case.

23. Plaintiff Strong is unaware of what, if any, costs she would be obliged to pay in the event she does not prevail.

24. Plaintiff Strong is currently employed by the State of Arkansas. She has no desire to work for BCBS and has not applied for work with the defendant since the latter part of 1971.

25. Plaintiff Loretta Bernice Wilson was employed by BCBS. Plaintiff Wilson was terminated by BCBS in 1973 and has not sought reemployment by the defendant since that time.

26. Plaintiff Wilson planned to return to school on a full–time basis in a two–year master's degree program at the University of Arkansas at Little Rock in June 1979.

27. Plaintiff Wilson was the only named plaintiff who did not appear and testify at the hearing on the plaintiff's motion for class certification.

28. Plaintiff Wilson had earlier been able to name only one person, other than herself and her co–plaintiffs, who had allegedly been discriminated against by the defendant.

29. Plaintiff Wilson has minimal financial resources available for the prosecution of this case.

30. Plaintiff Wilson has alleged essentially two discriminatory acts by defendant BCBS. First, plaintiff Wilson has alleged that a white female employee, identified only as "Vicki," was promoted by BCBS to the position of quality control clerk in a racially discriminatory preference to her. Secondly, plaintiff Wilson has alleged that her discharge by BCBS was racially motivated and was predicated upon the recommendation of Phyllis Richter, a white female BCBS employee.

31. Plaintiff Juanita Donahue, a high–school graduate, has occupied a clerical position with BCBS throughout her employment with the defendant.

32. Plaintiff Donahue's individual claim of racial discrimination is based on an incident which allegedly occurred in January 1973.

33. Plaintiff Donahue filed a discrimination charge against BCBS, based on the alleged incident of January 1973, with the EEOC in April 1974.

34. Plaintiff Donahue did not file suit over alleged failures to be promoted until May 6, 1976. The suit was based on the EEOC discrimination charge of April 1974 which was in turn based on the alleged incident of January 1973.

35. Plaintiff Donahue's Title VII complaint was premised upon a right–to–sue letter which was issued in connection with the plaintiff's discrimination charge lodged with the EEOC in April 1974.

36. Plaintiff Donahue, during the course of her testimony at the class certification hearing, recalled the identities of a number of female and/or black BCBS employees who had been victimized by the defendant's alleged discriminatory employment practices. Plaintiff Donahue did not disclose the majority of these names in either of her two previous depositions despite specific inquiries that were directed to her concerning identification of putative class members. Plaintiff Donahue did not disclose the majority of the persons mentioned as victims of alleged discrimination in either her initial or supplemental answers to the defendant's interrogatories. Plaintiff Donahue filed and served supplemental answers to the defendant's interrogatories on June 6, 1979, the day before the commencement of the class certification hearing. The plaintiff's supplemental answers did not mention the alleged victims of discrimination which the plaintiff referred to during her testimony.

37. Plaintiff Donahue has complained that a number of black and white female employees, members of the class she seeks to represent, have been discriminatorily preferred over her in promotions.

38. Plaintiff Donahue alleges that she has been singled out for retaliation because she filed this employment discrimination suit. However, it is her testimony that all the harassment she has received from defendant's management has come from her black supervisor, Lloyd Meyers.

39. Plaintiff Donahue has only a few hundred dollars available to devote to this lawsuit.

40. Plaintiff Bertha Lee Thompson (formerly Tatum) resigned her employment with defendant voluntarily in early April 1977 in order to take a job at Safeway.

41. Plaintiff Thompson stated in her letter of resignation to BCBS, "it is with regret that I hereby offer my resignation to be effective April 15, 1977."

42. For three years before plaintiff Thompson resigned, she was a supervisor in the Subscriber Accounts Department.

43. Plaintiff Thompson is currently employed by Safeway Stores.

44. Even under questioning from her own counsel, plaintiff Thompson unequivocally stated that there are no circumstances under which she would be interested in going back to work for defendant.

45. At the class certification hearing plaintiff Thompson named a number of individuals whom she alleged were victims of either racial or sexual discrimination by defendant. The plaintiff did not specify the dates of the alleged discriminatory acts. She acknowledged that although she had been twice deposed, including once just prior to the hearing, she had not told defendant about the "substantial majority" of the names that she mentioned on the witness stand.

46. Plaintiff Thompson testified that a number of her black or female co-workers whom she seeks to represent as a class had been promoted over her.

47. Plaintiff Thompson expressly stated that she was retaliated against in the selection of another black female.

48. Plaintiff Thompson stated that her attorney, Phil Kaplan, after conferring with her and going over the facts of her situation, drafted the EEOC charge which she filed. She acknowledged that the charge drafted by her attorney and filed with the EEOC did not mention alleged discrimination in pay or improper pay rates or pay grades.

49. Plaintiff Thompson knew of no female who had not been hired by BCBS because of her sex.

50. The only black person plaintiff Thompson knew of who had allegedly not been hired because of her race was co-plaintiff Strong in 1971.

51. Plaintiff Thompson was not aware of any white female who had been discriminated against by defendant.

52. The funds plaintiff Thompson has available to spend on supporting this lawsuit are very limited in scope.

53. Plaintiff Carolyn Juarez (formerly North) dropped out of school after completing the eighth grade and later obtained a GED certificate, the academic equivalent of a high–school diploma.

54. Plaintiff Juarez applied to and was quickly hired by BCBS in 1968.

55. Plaintiff Juarez's initial EEOC charge and this suit were precipitated by the allegedly racially discriminatory selection of Jim Monk, a white male college graduate with a background in quality control, rather than herself as assistant manager, a position for which she had not applied.

56. In the EEOC charge upon which this suit is based, plaintiff Juarez complained only of racial discrimination.

57. Plaintiff Juarez seeks to serve as class representative of, *inter alia*, female employees of BCBS.

58. Plaintiff Juarez testified that the only member of BCBS management who had treated her unfairly was female Bobbye Garner.

59. Plaintiff Juarez testified that BCBS female employees Shirley Maynard and Betsy Hughes were given discriminatory preference over her in promotions.

60. Plaintiff Juarez was promoted to supervisor in July 1976, which was subsequent to the date she filed her EEOC charge.

61. Although plaintiff Juarez testified that she felt she was later discharged from that supervisory position for being black, she admits that she was replaced with a black employee.

62. Plaintiff Juarez has not spent any money in prosecution of this case, has "little in the way of financial resources to devote to it," does not know what she might be liable for as costs if she does not win the case, and is $1,300 in debt to defendant's credit plan.

63. Plaintiff Juarez testified in court from a written list of a number of people whom she alleged to have been discriminated against whom she "learned about in her attorney's office."

64. Plaintiff Juarez had not disclosed the majority of those names before in her two depositions or in her responses to defendant's interrogatories, the most recent of which had been filed only the day before her hearing testimony.

65. Although plaintiff Juarez testified about several alleged instances of discrimination, she was unable to specify dates for any of the discriminatory acts except for Lloyd Meyer's complaint of an alleged occurrence in 1966.

66. No other black or female had asked plaintiff Juarez to represent them in this litigation.

67. Notwithstanding her intervening promotion to supervisor, plaintiff Juarez complained that her subsequent termination and replacement with another black female (in 1979) was in retaliation for her filing of an EEOC charge in 1976.

68. Plaintiff Bobbie Jean Jones was hired by BCBS on the day she applied for the job.

69. BCBS was recommended as an employer to plaintiff Jones by her instructor at Opportunities Industrialization Center ("OIC"), an institution that specializes in providing employment training to minority persons.

70. Plaintiff Jones has no personal knowledge of anyone else's claim of discrimination by defendant other than her own.

71. Plaintiff Jones complained that she was treated discriminatorily by female employee Reba Abbott, a member of the class whom she seeks to represent.

72. Plaintiff Jones voluntarily resigned from defendant's employ in 1977 and has not reapplied.

73. Plaintiff Jones is now in a career position with Southwestern Bell and has indicated no desire to work for defendant again.

74. Plaintiff Jones has very little in the way of resources to devote to this suit.

75. According to the admissions of plaintiffs from the stand at the class certification hearing, the majority of those they identified as alleged victims of discrimination had not been mentioned in response to specific questions in their depositions or in their interrogatory answers to relevant interrogatories from defendant.

76. Supplemental responses to defendant's interrogatories which were filed by plaintiffs on June 6, 1979, the day preceding the beginning of the class certification hearing, contained no names of alleged victims of discrimination.

77. Some of the persons alleged to have been discriminated against, e. g., Reola Williams, were stated to have been singled out for such treatment because of union activity, a basis irrelevant to this action.

78. At least some of the alleged discriminatees cited by plaintiffs did not share the perception that they have been victims of discrimination and have turned down promotional opportunities.

79. A dozen representative examples of comparisons between the alleged incidents of discrimination and the uncontroverted information contained in the defendant's personnel files will illustrate that there are serious doubts as to the existence of a class of individuals similarly situated.

80. Plaintiff Juarez testified that Margaret Goode, a black female, was discriminated against. The EEOC investigated Ms. Goode's charge and found no reasonable cause to believe she had been discriminated against. Ms. Goode did not elect to file suit under the right–to–sue letter issued to her by EEOC.

81. Plaintiff Donahue testified that Fred Patrick, a black male with a CPA rating, left defendant's employ, saying that he felt like he couldn't go any place in the company. Mr. Patrick's personnel file shows that although Mr. Patrick was promoted from staff auditor to supervisor of audits in 1978 after passing his CPA exam, he resigned

later that year to pursue career interests in Florida. He wrote in his letter of resignation that his "tenure at Blue Cross/Blue Shield has been a very rewarding experience and I appreciate the opportunity to have worked under your direction." He did not file a charge of discrimination with EEOC against defendant.

82. Plaintiff Juarez testified that Karen Cerrato, a pregnant white female, was pressured into quitting. Ms. Cerrato's personnel file shows that she resigned to stay home with her soon—to—be—delivered child in January 1979. On May 21, 1979, she reapplied to and was reemployed by defendant. She did not file a charge of discrimination with EEOC against defendant.

83. Plaintiff Donahue testified that Judy Zink, a white female with a degree in education, complained that she could not move in the company above a secretarial position and so went back to teaching. Ms. Zink's personnel record shows that she was hired in 1974 after she had unsuccessfully tried to get a teaching job. Her salary with defendant rose from $430 per month upon hire in November 1974 to $808 per month when she left in August 1978 to take a teaching position in Mountain Brook, Alabama, for which she had been recommended by defendant at her request. She did not file a charge of discrimination with EEOC against defendant.

84. Plaintiff Juarez testified that Karen Bell, a white female, was placed on probation although Ms. Bell thought her performance was satisfactory. Ms. Bell's personnel file shows that she was put on probation after she had 11 occurrences of absenteeism for a loss of 77.7 hours within a 6—month period. Plaintiff adduced no evidence of more leniently treated males. She did not file a charge of discrimination with EEOC against defendant.

85. Plaintiff Juarez testified that black female Clementine Delane was harassed into quitting. In contrast, her personnel file shows that Ms. Delane, a native of Chicago, was hired as a secretary in 1976 and promoted to executive secretary in 1977. In December 1977, following the death of her mother, she returned to Chicago—apparently in response to family obligations—and telephoned her voluntary resignation (without notice) from Chicago. She did not file a charge of discrimination with EEOC against defendant.

86. Plaintiff Juarez testified that Janice Dillard, a white female, was pressured into quitting because she was plaintiff Juarez's friend. Ms. Dillard's personnel record shows that she was hired in August 1975 and voluntarily quit the following month inasmuch as she was getting married and moving out of town. She reapplied and was rehired in October 1976 and resigned a second time the following June because of illness. Her supervisor recommended that she be reemployed, if she recuperated. She did not file a charge of discrimination with EEOC against defendant and there is no evidence that she has reapplied.

87. Plaintiff Donahue testified that Louise Elmore, a white female, was fired after she spoke up concerning some problems. Ms. Elmore's personnel records shows that she, in fact, resigned inasmuch as she was moving to Heber Springs. She did not file a charge of discrimination with EEOC against defendant.

88. Plaintiff Jones testified that black female Sally Harrison was denied vacation ahead of schedule. Ms. Harrison's personnel folder shows that she was rehired in late September 1976 and would have thus first been eligible for vacation on the anniversary of her rehire date. On July 14, 1977, more than two months prior to that anniversary, she telephoned her supervisor, Carolyn Wallace Rufus, a black female, and announced that she would be on vacation until August 2. Ms. Rufus told Ms. Harrison that she would be terminated if she did not return to work. She did not return. She was terminated upon the recommendation of her black female supervisor. She did not file a charge of discrimination with EEOC against defendant.

89. Plaintiff Jones testified that black female Helen Johnson, who worked in the inforex unit, was discriminatorily dismissed for not doing enough work while others

who did similarly little work were retained. Ms. Johnson's personnel file shows that she had serious underlying problems of absenteeism. She conceded in her memo of May 4, 1976, that her attendance was unacceptable. The manager of her department, black female Reggie Stewart, thereupon gave Ms. Johnson a second chance. Unfortunately, her attendance did not improve and her resignation was consequently requested and accepted. She has not filed a charge of discrimination with EEOC against defendant.

90. Plaintiff Donahue testified that the Porter sisters, white female supervisors, were discriminated against on the basis of sex when Bill Smiley, a younger white male, was named assistant manager over them. A comparison of the personnel files shows that Mavis and Sue Porter each have one year of post–high school business courses. In contrast, Bill Smiley has a degree in Business Administration and Accounting and previously worked successfully for "Big Eight" accounting firms, Arthur Anderson & Co. and Peat, Marwick, Mitchell, from whom he got favorable references and job–related experience. Neither one of the Porter sisters has filed a charge of discrimination with the EEOC against defendant.

91. Plaintiff Donahue testified that black female Jean Williams and white male David Bridges were both hired into management trainee positions about four years ago and that Bridges was promoted to assistant manager after "about a year," whereas Williams reached that rank only "a few months ago." A review of their files shows that Bridges, who graduated with honors in contrast to Ms. Williams, was not promoted to assistant manager until three years after he was hired. Both he and contemporaneously–hired Williams advanced to the position of supervisor after a year's employment. Ms. Williams has not filed a charge of discrimination with the EEOC against defendant.

92. The first of these consolidated cases, plaintiff Strong's case, was filed in 1974. Plaintiff Thompson's and plaintiff Wilson's case was also filed in 1974. The three remaining cases were filed in 1976. In 1977 the plaintiffs filed their papers seeking to obtain class certification.

93. Prior to the class certification hearing the plaintiffs had deposed only one of the defendant's personnel and that deposition was taken in 1976, nearly 3 years before the hearing.

94. A review of the court's files reflects that the plaintiffs did not utilize discovery procedures during 1977, 1978, or 1979. Discovery was not stayed in these cases during 1977, 1978, or 1979.

95. Other than themselves, the plaintiffs did not call any other alleged discrimination victim to support the plaintiffs' request for class certification.

96. On June 8, 1979, this Court ordered the plaintiffs to submit proposed findings of fact within 30 days after the receipt of the transcript of the testimony presented at the class certification hearing. The plaintiffs were given a 3–week extension of time within which to submit their post–hearing proposed findings of fact. The Court has not yet received plaintiffs' proposed findings of fact and conclusions of law.

97. The plaintiffs do not have the financial resources to pay the costs of sending notices which would be required if a class were certified.

98. There is no evidence of a class of applicants who have been denied employment by the defendant on the basis of race or sex.

99. There is evidence that BCBS female employees, both black and white, are markedly under–represented in the area of sales and higher paying management positions. The upper echelons of management at BCBS appear to be white male dominated. The evidence presented by the plaintiffs so far has not convinced this Court, however, that these female employees, employees who may have been denied promotions and benefits based on their race or sex or both, are so numerous as to make their joinder impracticable. Even if the Court could assume the existence of a class, we could not

in good conscience entrust the named plaintiffs with the task of representing the interests of the putative class members.

100. Based on the record presently before this Court, the named plaintiffs cannot adequately represent the interests of alleged class members.

## III.

## CONCLUSIONS OF LAW

1. With the exception of the complaint filed by plaintiff Donahue on May 6, 1976, the Court has subject matter jurisdiction over each of these actions under the provisions of Title VII of the Civil Rights Act of 1964, as amended, and 28 U.S.C. § 1343 (3) and (4). Subject matter jurisdiction is questionable in the case of plaintiff Donahue. As the findings of fact have stated previously, plaintiff Donahue's suit was authorized by a "right-to-sue" letter issued by the EEOC in connection with a discrimination charge made by plaintiff Donahue on April 17, 1974. The plaintiff's discrimination charge was predicated on alleged acts of discrimination occurring in January 1973. Plaintiff Donahue's 14–month delay in notifying EEOC may well have defeated her attempts to timely invoke the EEOC's jurisdiction. *Smith v. OEO, State of Arkansas*, 538 F.2d 226, 228 (8th Cir. 1976); *Greene v. Carter Carburetor Co.*, 532 F.2d 125, 126 (8th Cir. 1976); *Olson v. Rembrandt Printing Co.*, 511 F.2d 1228, 1231 (8th Cir. 1975) (*en banc*). Plaintiff Donahue's complaint is also based on 42 U.S.C. § 1981. Since plaintiff Donahue appears to have allowed more than 3 years to have elapsed before she brought her suit, however, her suit might be barred by Arkansas' statute of limitations. *Clark v. Mann*, 562 F.2d 1104, 1112 (8th Cir. 1977). For two reasons, we are reluctant to conclude at this time that plaintiff Donahue's complaint should be dismissed for want of subject matter jurisdiction. First, the Court has frequently informed the parties that class action issues only will be dealt with before proceeding with a consideration of other issues. Secondly, a resolution of jurisdictional questions presented by plaintiff Donahue's complaint at this time would not afford the plaintiff a meaningful opportunity to be heard on those issues. These are important questions since a finding of a lack of subject matter jurisdiction would preclude plaintiff Donahue from litigating even her individual claims of discrimination. The seriousness of the issues is illustrated by the Court of Appeals' statement in the case of *International Woodworkers of America, AFL–CIO, v. Georgia–Pacific Corporation*, 568 F.2d 64, 66 (8th Cir. 1977), "Provided the court has jurisdiction, a litigant's individual claim survives the determination that he cannot maintain his action as the representative of a class under Fed. R.Civ.P. 23."

2. Although federal courts have consistently recognized that suits alleging racial or sexual discrimination are often by their very nature class suits, that is, suits involving classwide wrongs and typically presenting common questions of law or fact, attention to the requirements of Rule 23(a) of the Federal Rules of Civil Procedure remains nonetheless indispensable. *East Texas Motor Freight v. Rodriquez, supra*, 431 U.S. at p. 405, 97 S.Ct. at p. 1897. Thus, employment discrimination cases, whether based on race or sex discrimination or both, cannot be certified as class actions unless the requirements of Rule 23(a) are met. No case is "inherently" or automatically certifiable as a class action under Rule 23 of the Federal Rules of Civil Procedure. The *Rodriquez* decision does not stand for the proposition that discrimination cases are class actions *per se*. The decision does nothing more than recognize that certain kinds of cases are more susceptible of being treated as class actions.

3. The suggestion that a litigant has to establish or show some probability of prevailing on the merits at trial in order to have a class certified in an employment discrimination has been expressly rejected. Nothing in either the language or history of Rule 23 gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it

may be maintained as a class action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Id.* at p. 178, 94 S.Ct. at p. 2153; *Cf. Donaldson v. Pillsbury Co.*, 554 F.2d 825 (8th Cir. 1977), cert. den., 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977) (putative class representative need not establish a likelihood of prevailing on the merits of her individual claims in order to adequately represent a class).

4. The plaintiffs have the burden of establishing that class action treatment is appropriate. *Smith v. Merchants & Farmers Bank of West Helena, Arkansas*, 574 F.2d 982, 983 (8th Cir. 1978).

5. The plaintiffs, in order to meet their burden of establishing that class action treatment is appropriate, must satisfy the requirements of Rule 23(a) of the Federal Rules of Civil Procedure. Those requirements are as follows:

"Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

6. While it is inappropriate to consider whether the plaintiffs will prevail on the merits in determining whether a class should be certified, the admissibility of all evidence which might have some relevance to the merits is not rendered inadmissible in a class certification proceeding. Evidence may be admissible for one or more purposes. The defendant's evidence, to the extent that it is relevant to the merits, is admissible in a proceeding to determine whether a case should be certified as a class action only for the limited purposes of refuting or supporting the existence of a class and establishing or rebutting the numerosity requirement of Rule 23(a) of Federal Rules of Civil Procedure.

7. Were a class to be certified, it could not include future applicants or future employees. Congress did not expand the jurisdiction of the federal courts by adopting Rule 23 of the Federal Rules of Civil Procedure. This Court, by virtue of the jurisdictional limitations imposed by Article III of the United States Constitution, does not have the authority to bind the parties before it in the absence of an actual case or controversy. Since future applicants and future employees, by definition, do not exist, they are incapable of being "injured in fact." Thus, there is no standing to litigate and the claims of future applicants and employees are not ripe for judicial resolution. Succinctly stated, the prospective claims of future applicants and future employees do not present "justiciable controversies" within the meaning of Article III of the United States Constitution.

8. Both evidenced and innate antagonisms foreclose certifying these black female plaintiffs as representatives both of all blacks and all females. As detailed in the Court's findings of fact, black female plaintiffs Donahue, North (now Juarez), Thompson (now Tatum), and Wilson named a dozen or more white female employees whom they contended were either the beneficiaries or perpetrators of racially or sexually discriminatory or retaliatory decisions against them. These statements by the plaintiffs evidence such antagonism as to foreclose adequate representation by plaintiffs of all females, most of whom are white.

The innate conflict presented in cases such as this was aptly illustrated in *Colston v. Maryland Cup Corp.*, 18 FEP Cas. 83, 85 (D.Md.1978), where a black female likewise sought to represent all blacks and all females. ·

Were plaintiff to be permitted to represent both all black and all female em-

ployees, she would be placed in a position of inherent conflict. On the one hand, she would argue that defendant's policies and practices discriminated in favor of males, including black males, and against females. At the same time, she would claim that defendant favored whites, including white females, over blacks. In light of these conflicting positions, plaintiff would not be an adequate representative of either black males or white females. *See, Droughn v. FMC Corp.*, 74 F.R.D. 639, 643 (E.D.Pa.1977).

Such a conflict was found in *Martinez v. Bechtel Corp.*, 11 FEP Cas. 898, 904 (N.D. Cal.1975), to "violate the adequate representation requirement of Rule 23 . . ." The solution reached in both *Martinez v. Bechtel, supra,* and *BeDan v. Bach*, 17 Fed. R.Serv.2d 119 (D.Colo.1973), is that:

> The same plaintiff and the same attorney cannot be permitted to maintain a class action on behalf of both those affected by a defendant's race discrimination and those affected by the same defendant's sex discrimination.

9. Adequacy of representation cannot be assured in this case as it has in some others, *e. g., Colston v. Maryland Cup Corp., supra,* by certifying a class solely of black females and thus obviating antagonism. Both plaintiffs Donahue and Thompson have identified black female employees who have allegedly profited from discrimination against them. Plaintiff Donahue identified her black male boss, Lloyd Meyers, as the chief discriminator and retaliator against her.

10. Plaintiffs Donahue, North (Juarez) and Strong did not allege sex discrimination in their charges with the EEOC upon which the right–to–sue letters acted upon in this case were issued. *Ergo*, they cannot sue either individually or as a class representative on a basis not alleged to the EEOC. *Belcher v. Bassett Industries, Inc.*, 376 F.Supp. 593 (W.D.Va.1974) (female employees cannot sue on sex discrimination where charged limited to race); *Jiron v. Sperry Rand Corp.*, 10 FEP Cas. 730 (D.Utah 1975); *Matyi v. Beer Bottlers Local 1187*, 392 F.Supp. 60 (E.D.Mo.1974); *Fix v. Swinerton and Walberg Co.*, 320 F.Supp. 58 (D.Colo.1970).

11. These legal constraints on the composition of the class dispel the prospect of numerosity being satisfied.

12. Employees who voluntarily quit their jobs are not adequate class representatives. *Bradley v. Southern Pacific Co.*, 51 F.R.D. 14, 15 (S.D.Tex.1970), aff'd, 486 F.2d 516 (5th Cir. 1973); *Hernandez v. Gray*, 530 F.2d 858, 859 (10th Cir. 1976); *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 522 F.2d 1235, 1240 (7th Cir. 1975); *Ashworth v. Sherwin–Williams Co.*, 10 FEP Cas. 709 (N.D.Ga.1974); *Campbell v. Al Thrasher Lumber Co.*, 13 FEP Cas. 189 (N.D.Cal.1973); *Horton v. M & B Metal Products Co.*, 11 FEP Cas. 1039, 1041 (N.D. Ala.1974). Thus plaintiffs Jones and Thompson, who voluntarily left defendant's employ in 1977 to take jobs at Southwestern Bell and Safeway, respectively, and who do not seek reemployment with defendant, are not adequate class representatives.

13. Even those discharged from their jobs cease to be adequate class representatives with the passage of years, especially when they do not seek reinstatement. *Heard v. Mueller Company*, 464 F.2d 190, 194 (6th Cir. 1972). *Accord, White v. Gates Rubber Co.*, 53 F.R.D. 412 (D.Colo. 1971); *Collier v. Hunt–Wesson Foods, Inc.*, 13 FEP Cas. 88 (S.D.Ga.1976); *Pearson v. Borden Metal Co.*, 14 FEP Cas. 644, 647 (N.D.Ala.1976) (passage of 4½ years); *Horton v. M & B Metal Products Co.*, 11 FEP Cas. 1039 (N.D.Ala.1974) (passage of 4 years); *Pruitt v. Commercial Carriers*, 395 F.Supp. 1040 (N.D.Ala.1974); *Graves v. Carraway Methodist Hospital*, 10 FEP Cas. 1268 (N.D.Ala.1974) (passage of 5 years); *Tolbert v. Daniel Construction Co.*, 332 F.Supp. 772, 775 (D.S.C.1971) (passage of 3 years), citing *Brewster v. Winn–Dixie Stores, Inc.*, C.A. 70–296 (D.S.C.1970) (passage of 3 years); *Hyatt v. United Aircraft Corp., Sikorsky Aircraft Div.*, 50 F.R.D. 242 (D.Conn.1970) (passage of more than 2 years); *Burney v. North American Rock-*

*well Corp.*, 302 F.Supp. 86 (C.D.Cal.1969). Plaintiff Wilson's termination 6 years ago and her not having sought reemployment since that time make her an inadequate class representative under this standard.

A fortiori, plaintiff Strong, who last applied for employment in 1971 and who has never been employed by defendant, is not an adequate class representative. This is particularly the case where she has had limited contact with defendant and may never have completed the application process. *Smith v. Merchants & Farmers Bank*, 574 F.2d 982, 983 (8th Cir. 1978).

14. Those who seek to be class representative must be able to demonstrate that there are others in the class. The rule of law in this circuit was clearly stated in *Wright v. Stone Container Corporation*, 524 F.2d 1058, 1062 (8th Cir. 1975), in which the Court found plaintiff to have satisfied neither the adequacy nor typicality requirements, where:

> Except for two vague references at the class hearing, Wright could not identify any person who had been subjected to the same or similar discriminatory treatment as he allegedly suffered. . . . Rule 23(a)(3) obligates the class representative to at least demonstrate that there are other members of the class who have similar grievances.

*Accord, Thompson v. Sun Oil Co.*, 523 F.2d 647, 649 (8th Cir. 1975); *Doctor v. Seaboard Coast Line R. Co.*, 540 F.2d 699, 706 (4th Cir. 1976), *cited with approval* in *Smith v. Merchants & Farmers Bank, supra; Clark v. Virginia Paper Co.*, 17 FEP Cas. 581, 583 (D.S.C.1978) (could name only one or two others; *Collier v. Hunt Wesson Foods, Inc., supra; Marshall v. Target Stores, Inc.*, 11 FEP Cas. 775 (E.D.Mo.1975) (and cases cited therein); *Parker v. Kroger Co., Inc.*, 14 FEP Cas. 75, 82 (N.D.Ga.1976); *Smith v. Liberty Mutual Insurance Co.*, 11 FEP Cas. 734 (N.D.Ga.1974); and *Steffin v. First Charter Financial Corp.*, 77 F.R.D. 498 (C.D.Cal.1978) (could name only one other).

Plaintiff Jones (who knew of no other claims than those of her co–plaintiffs, which she did not know to be true or untrue), and plaintiff Strong (who knew no one else whom she believes to have been treated unfairly by defendant because of race or sex) are patently inadequate representatives by this standard.

15. In view of the binding effect on absent class members, courts ought to be especially chary about certifying inadequately resourced plaintiffs as class representatives. *Cf.* concurring opinion of Judge Godbold in *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir. 1969). Plaintiffs must be able adequately (1) to fund discovery and expert testimony, (2) to resist inadequate settlements that plaintiffs in more exigent circumstances would feel compelled to accept, and (3) to fund those notices to class members that an increasing number of courts are requiring in Title VII cases as a matter of constitutional obligation, regardless of whether the case is Rule 23(b)(2) or Rule 23(b)(3) action. *E. g., Neloms v. Southwestern Electric Power Co.*, 72 F.R.D. 128, 131 (W.D.La. 1976); *Alexander v. Avco Corp.—Aerospace Structures Div.*, 380 F.Supp. 1282, 1286 (M.D.Tenn.1974).

Other courts are increasingly wary of having class representatives before them who, because of their indigency, are impervious to, and therefore unrestrained by, the prospect of being liable for costs. *E. g., Rode v. Emery Air Freight Corp.*, 15 FEP Cas. 1355 (W.D.Pa.1977).

All of the named plaintiffs in their depositions described the sums which they have available or which they are willing to devote to this lawsuit as "very limited," "minimum," or as "a few hundred dollars." The claims of nameless others cannot safely be laid on the shoulders of these representatives. Class certification ought thus here to be denied as it was in other similar Title VII cases such as *Neloms v. Southwestern Electric Power, supra; Parker v. Kroger Co., Inc., supra; Wilson v. General Motors Corp.*, 11 FEP Cas. 1438 (S.D.Ind.1975). Plaintiffs' purported competence as class champions is also impugned

by the ignorance of their potential liability for taxable costs reflected in their depositions.

16. Plaintiffs' complaints of the retaliatory selection of other females or blacks, allegedly chosen in preference to them because of their having filed charges, is clearly not a class issue. *Francis v. American Telephone and Telegraph Co.*, 55 F.R.D. 202, 208 (D.D.C.1972). Indeed, preoccupation with peculiar retaliatory wrongs allegedly done to one may well make such person an inadequate representative of the class. *Williams v. Boorstin*, 451 F.Supp. 1117, 1124 (D.D.C.1978).

17. Failure diligently to prosecute a Title VII class action on behalf of the class has frequently been cited in finding plaintiffs to be inadequate representatives of that class. *E. g., Lau v. Standard Oil of California*, 13 FEP Cas. 664 (N.D.Cal.1975); *Burns v. Georgia*, 15 FEP Cas. 1566 (N.D. Ga.1977); *Parker v. Kroger, Inc., supra.*

18. The plaintiffs have failed to establish that a class exists and, if a class does exist, that members of the class are so numerous as to make their joinder impracticable. The plaintiffs have also failed to meet their burden of showing that they could fairly and adequately protect the interests of members of the class.