| CIVIL NO. | CASE | |
|---|---|---|
| | Thomas Alkon, Esq.; John Lenahan, Esq.; John James, Esq. | JURY |
| 80–266 | Marie T. Zenda & Lazloo Zenda vs V. I. Water and Power Authority<br>Action for Damages<br>Russell Johnson, Esq.; John G. Short, Esq. | COURT |
| 80–267 | Warner Mattmann vs Leroy Quinn, et al<br>Action for Injunctive Relief and Declaratory Judgment<br>James Isherwood, Esq. Attorney General | COURT |
| 80–270 | Albert Vincent Marcelle & Maria Marcelle vs Hess Oil Virgin Islands<br>Action for Damages<br>Albert Sheen, Esq.; Britian Bryant, Esq.; James Hymes, Esq. | COURT |
| 80/275 | Gentlewinds Management vs Stephen Lomes and Barbara Lomes and Resort Services of V.I.<br>Action for Damages & Injunction<br>John Lenahan, Esq.; R. Eric Moore, Esq.; Winston Hodge, Esq. Douglas Brady, Esq. | COURT |

**Troy NATION, et al.**

v.

**WINN–DIXIE STORES, INC., et al.**

**Civ. A. No. C80–1468.**

United States District Court,
N. D. Georgia,
Atlanta Division.

June 29, 1982.

William Hazleton, Augustine & Hazleton, Bensonetta Tipton Lane, The Law Project, Atlanta, Ga., for plaintiffs.

John W. Collier, Ogletree, Deakins, Nash, Smoak, Stewart & Edwards, Atlanta, Ga., for defendants.

## ORDER

ORINDA D. EVANS, District Judge.

This action under Title VII and 42 U.S.C. §§ 1981 and 1985 is presently before the Court on Plaintiffs' Motion to Certify Class. An evidentiary hearing was held in this matter on March 20, 1981. The parties have filed a number of briefs. Having considered the evidence and the law presented to the Court, the Court hereby DENIES IN PART the motion to certify, and DEFERS ruling on the remainder.

Plaintiffs are black employees of Winn-Dixie. They have been employed there for periods ranging from five to eight years. They complain of Defendants' failure to properly train and promote them. Although Plaintiffs' First Amended Complaint, filed January 23, 1981, does not spe-

cifically allege that those promoted in lieu of Plaintiffs were less qualified whites, it does allege that Defendants' failure to promote these Plaintiffs was on account of racial discrimination. It is alleged that various managerial personnel conspired to deprive each named Plaintiff of training and promotional opportunities. The First Amended Complaint alleges, see paragraph 19, broad ranging acts of discrimination against all black employees working at Winn-Dixie stores.[1]

The class sought to be certified is all past, present, and future black employees of metropolitan Atlanta Winn-Dixie stores from the date of enactment of Title VII forward. The Motion to Certify, as amended, asserts that Defendants maintain approximately 72 retail stores in the Atlanta metropolitan area and indicates that the named Plaintiffs collectively have worked in approximately 15 of those stores. The number of black employees in the Atlanta metropolitan area stores is estimated to be approximately 335.

Winn-Dixie's "Atlanta Division" is divided into two districts. Each is headed by a district manager. Each district has five "territories." Each territory is headed by a "retail store supervisor," to whom various executive-level staff officials report. Each territory contains about seven retail stores.

All retail stores within the Atlanta Division have basically the same personnel structure, with a store manager at the top, followed by an assistant store manager and in the larger stores, a junior assistant man-

---

1. Paragraph 19 of the Amended Complaint is as follows:

Defendants intentionally have engaged in and continue to intentionally engage in unlawful employment practices at the Atlanta Division of Winn-Dixie Stores, Inc. in violation of Section 703 of Title VII, 42 U.S.C. § 2000e-II and Section 704(a), 42 U.S.C. § 2000e-3. The Defendants have established a discriminatory assignment, promotional, transfer, and training system which has the effect of continuing and preserving the Defendants' policy, practice, custom and usage of limiting the employment and promotional opportunities of Black employees because of their race and color. Defendants' acts, policies, practices and customs of discrimination include, but are not limited to, the specific instances enumerated below:

(a) Defendants maintain and have historically maintained racial classifications in certain job assignments in their operations whereby certain jobs are racially identifiable as white jobs and some as Black jobs;

(b) Defendants require Black employees to meet higher and/or different standards for promotions with reference to experience, training and ability than the standards required of whites;

(c) Defendants continue to prefer and choose white employees over qualified Black employees from those employees eligible for promotion.

(d) Defendants ignore, discourage and otherwise fail to respond to the requests of qualified Black employees for promotion.

(e) Defendants offer to white employees those training opportunities necessary for promotion while failing and refusing to grant such opportunities to equally and/or better qualified Black employees.

(f) Defendants engage in conduct causing Black employees to suffer unequal and inferior terms and conditions of employment in that Black employees do not enjoy on-the-job treatment equal to that enjoyed by white employees. Such unequal treatment includes, but is not limited to, Defendants' policies and practices of enforcing rules more stringently against Black employees than against white employees, of subjecting Black employees to verbal abuse, harassment and surveillance which white employees are not subjected to, subjecting Black employees to more burdensome and difficult work loads and job assignments than white employees are subjected to, and of criticizing and scrutinizing personal and social attributes of Black employees which are not the subject of such criticism or scrutiny with regard to white employees.

(g) Defendants engage in and allow others to engage in retaliatory conduct toward the named Plaintiffs in response to their filing EEOC charges against said Defendants. Such conduct includes, but is not limited to, verbal and physical harassment; threats to body and personal property; and the intentional refusal and failure to promote or place in more advantageous job assignments those Plaintiffs who have filed such charges.

(h) Maintaining policies and practices which utilize subjective criteria in assignment, promotional and firing decisions, which criteria operate to disparately and adversely affect Blacks because of their race and color.

(i) The effect of the policies and practices complained of in Sub-Paragraphs (a) through (i) above has been to discourage and intimidate Black employees from even applying for training, transfers and/or promotion.

ager. There are then various departmental managers: meat manager for the meat department; produce manager for the produce department, and so forth. Within each of the departments are various clerks, including full-time and part-time clerks.[2] In 1977 Defendant instituted a "scanning" program, which included the position of scanning manager for eight of its stores and the staff position of scanning coordinator.

Defendants have a "promote from within" policy. Decisions concerning promotions below the store manager level are made by the retail store supervisor. Store managers have informal input into these decisions, but the weight given to such input varies according to the particular supervisor and store manager involved. Stated company policy is that where qualifications of those competing for promotions are equal, length of service is the deciding factor.

Plaintiff Nation is a produce manager.[3] Plaintiff Walton was previously a dairy/frozen food manager and is now a produce clerk.[4] Plaintiff Collins is a meat cutter; Plaintiff Wesley is a dairy/frozen food clerk.

Plaintiff Nation has asserted that Defendant discriminatorily delayed giving him the necessary training to qualify for the position of produce manager. Plaintiff Walton asserts that he was qualified for the position of dairy/frozen food manager in May, 1979, having had all necessary training and being otherwise qualified. Walton asserts that less qualified whites were promoted before he was, however. He did not receive his promotion to dairy/frozen food manager until September, 1980. Plaintiffs Collins and Wesley complain of Defendants' actions allegedly taken to impede their training and promotional progress.

In the section of the brief in support of the Motion to Certify asserting the existence of questions of law and fact common to the class, emphasis is given to Defendants' failure to have stated, objective criteria[5] for promotion. This lack of uniform objective criteria is alleged to have promoted and maintained the existence of an arbitrary, discriminatory promotions system. Plaintiffs also complain that their promotional opportunities and those of other black employees have been hampered by Defendants' failure to post notices of job openings. Defendants' practice is simply to let word of openings pass by word of mouth among employees. Defendants do, however, have procedures whereby an employee interested in promotion may make his interest known to management.

Defendants have training programs for employees desiring promotion. Completion of specified training is generally, although not always required for specified promotions. Plaintiffs assert the program is arbitrarily administered, with program requirements being frequently altered according to the race of the employee involved. Also, they allege that black employees are transferred between stores to impede their promotional progress.

Plaintiff Nation testified at the certification hearing. He related various examples of instances of alleged discrimination he has suffered. The Court received in evidence portions of depositions of the named Plaintiffs and various supervisory personnel of Defendants'. The depositions relate the individual employment experiences of the

---

2. Many of the so-called part-time clerks actually work full-time. Only those designated "full-time" are eligible for the training programs tied to promotions.

3. He was promoted to produce manager in March of 1981, after the filing of the instant action. Previously he was a scanning manager.

4. The demotion occurred after this action was filed.

5. Defendants have indicated in discovery that although they suggest certain factors for supervisors to consider (e.g., employee's confidence, judgment, ability to plan, whether respected by fellow workers) in making promotions, these are not part of any required checklist. Various retail store supervisors indicated in discovery that they considered a variety of factors such as leadership ability, ability to take and give orders, performance, productivity, attendance, and punctuality.

named Plaintiffs and also provides information as to the criteria used by supervisors in making promotions decisions.

Plaintiffs also presented statistical evidence. The evidence showed very low percentages of black employees in the higher-up jobs. Only three store managers out of a total of 71 are black. Twelve assistant store managers out of a total of 146 are black. No black employee has ever held the position of retail store supervisor, or any of the executive staff positions directly under the retail store supervisor.

The starting point for analysis of Plaintiffs' motion for class certification is the Supreme Court's recently announced decision in *General Telephone Co. of the Southwest v. Falcon*, —— U.S. ——, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). In that decision, the Supreme Court rejected the "across-the-board" approach to class certification in Title VII cases which has traditionally been followed in the Fifth Circuit and to date, in the Eleventh Circuit as well.[6] In that case, plaintiff Falcon alleged that General Telephone had discriminated against him in its promotion practices on account of his Mexican-American national origin. The district court certified a class of those Mexican-Americans who had been denied employment by defendant, as well as defendant's Mexican-American employees. In disapproving the action taken by the district court, the Supreme Court held that Rule 23, Fed.R.Civ.P., requires the trial court to determine, as a prerequisite to certification, that the movant's claim and the class claims indeed share common questions of law or fact and that the movant's claim is typical of the class claims. Although the Court did not disagree with the proposition underlying the Fifth Circuit's across-the-board rule—that racial discrimination is by definition class discrimination—it held that such proposition did not automatically mean that a class action could be maintained. The Court noted that although the Equal Employment Opportunity Commission is statutorily exempt from the need to comply with Rule 23, no such exemption exists for private litigants. The requirements of Rule 23, the Court noted, effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims," citing *General Telephone Co. v. EEOC*, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). —— U.S. ——, 102 S.Ct. 2369.

The Supreme Court also noted with apparent disapproval that at trial, Falcon's individual claim was pursued on a theory of intentional discrimination; the class claims were sought to be proved on disparate impact theory through statistical evidence. Noting that "the individual and class claims might as well have been tried separately," the Court stated: "It is clear that the maintenance of respondent's action as a class action did not advance 'the efficiency and economy of litigation which is a principal purpose of the procedure,'" citing *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 553, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974). —— U.S. ——, 102 S.Ct. 2372.

The judgment of the Court of Appeals affirming the certification order was reversed; the case was remanded for further proceedings, including reconsideration of the certification issue in accordance with the holdings of the Supreme Court's opinion.

Chief Justice Burger concurred in part and dissented in part. He concurred in the portion of the Court's decision stating the general principles to be considered in determining whether a class should be certified under Rule 23. However, he disagreed with the decision to remand in the case for further proceedings on the certification issue. Noting that Falcon was complaining of lack of promotion, the Chief Justice pointed out that any analysis of the merit of Falcon's claim would have to be based upon comparison analysis of his qualifications with those of the persons promoted instead of him—an individualized consideration not susceptible to class treatment. Further, it was observed that the evidence in the record

---

**6.** The Eleventh Circuit has never ruled on this issue; the Fifth Circuit precedent is binding

under *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

showed without dispute that the percentage of Mexican-Americans represented in the class of persons hired by defendant during the relevant time period exceeded the percentage represented in the population as a whole. For those reasons, the Chief Justice indicated he would simply reverse and remand with instructions to dismiss the class claim.

In order to determine whether Plaintiffs' claims are typical of the claims of the class, and whether there are questions of law or fact common to the class, the Court must under the dictates of *Falcon* look first to see exactly what the named Plaintiff's individual claims are. Once Plaintiff's claims have been properly delineated, it will be possible to move to a comparison between those claims and the claims of absent class members.

As mentioned previously, Plaintiffs all claim that Defendants used certain criteria and procedures in making promotions which adversely affect promotional opportunities of black employees. Plaintiff Nation claims these practices have specifically impacted on his progress toward the position of produce manager, which he attained later than he asserts he would have, had Defendants not discriminated against him. Plaintiff Walton makes similar claims.[7] Plaintiffs Collins and Wesley are clerks who have never held manager level positions; they complain of Defendants' alleged discriminatory failure to train and promote them to manager level positions.

When one focuses upon the particular situations of these named Plaintiffs, it becomes clear that their claims are not representative of any claims of numerous groups who are within the class they seek to represent. Basically, the named Plaintiffs collectively are complaining of the promotions track between the full-time clerk position and the department manager position in individual retail stores. Their claims have not been shown to be typical of those which might be made by part-time clerks, cashiers, bookkeepers, or persons holding the position of assistant store manager or above. Further, none of them worked for Defendants prior to 1976. The named Plaintiffs collectively have worked in only two—perhaps three—of Defendants' Atlanta "territories," each of which apparently operates independently of the other territories in making promotions decisions. Further, none of Plaintiffs have ever been terminated by Defendants and therefore their claims cannot be said to be representative of those of any ex-employees who might wish to assert claims of discriminatory termination. Therefore, Plaintiffs' Motion to Certify Class is hereby DENIED IN PART, to the extent it violates the constraints set forth in this paragraph.

Turning to the more difficult issues remaining, the Court must first determine whether in light of the *Falcon* decision, any class action is properly maintainable in a failure to promote case. As mentioned, the language of the separate concurrence and dissent by Chief Justice Burger tends to lead one in the direction of thinking that because individualized proof is required in such a case, a plaintiff would never be able to meet the typicality and common question requirements of Rule 23. However, the Court interprets the majority opinion as not requiring, and perhaps not permitting, such a result.

The *Falcon* decision is interpreted by this Court to have little, if any, effect on the certification of so-called disparate impact cases in which the named plaintiff is seeking to enjoin defendant's utilization of an employment practice, procedure or policy which adversely limits employment of members of a protected class in a disproportionate fashion. In such a case, the plaintiff is not seeking to prove any intentional wrongdoing by the defendant employer. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). He is only seeking to prove that the complained of practice has a disproportionate adverse impact on the group he seeks to represent. It then becomes the employer's burden to

---

7. In this regard the Court notes the Complaint has not been amended to add a claim pertaining to Plaintiff Walton's demotion in the spring of 1981.

prove the legitimacy of the challenged practice or policy. If the plaintiff carries his burden, but the employer does not, then an injunction issues barring further use of the challenged practice/policy and moreover, back pay will be granted to those employers who have made some reasonable showing that the invalid practice impacted upon their particular situation.

A true disparate impact case involves a discrete employment practice or procedure utilized by the employer in making hiring or promotion decisions. *Pouncy v. Prudential Insurance Co. of America*, 668 F.2d 795 (5th Cir. 1982). It is a case where the effect of the employer's use of the complained of practice or procedure on the protected class may be objectively determined. For example, in *Griggs*, there was a requirement of a high school diploma. It could be objectively determined what percentage of blacks, as opposed to whites, were disqualified by the diploma requirement. On the other hand, an allegation that defendant "systematically discriminates against blacks" concerns neither a discrete employment practice, nor a practice whose precise impact on the class can be objectively determined.

In order to evaluate Plaintiffs' claims, the Court turns to paragraph 19 of the First Amended Complaint—Class Action, filed January 23, 1981. That paragraph sets out in subparagraphs (a) through (i) a number of specific allegations concerning discriminatory acts, policies and practices of the Defendants. In the Court's opinion, the vast majority of these are not susceptible to disparate impact presentation. For example, subparagraph (c) alleges that Defendants "continue to prefer and choose white employees over qualified black employees from those employees eligible for promotion." Subparagraph (d) alleges that Defendants "ignore, discourage and otherwise fail to respond to the requests of qualified Black employees for promotion." The only subparagraph which appears to be possibly

susceptible to disparate impact analysis is subparagraph (h) which alleges that Defendants "utilize subjective criteria in assignment, promotional and firing decisions." Here, the Court notes that there is some Fifth Circuit precedent for treating this sort of claim as a disparate impact claim. *Rowe v. General Motors Corp.*, 457 F.2d 348 (5th Cir. 1972); *Wade v. Mississippi Cooperative Extension Service*, 528 F.2d 508 (5th Cir. 1976). *But cf. Pouncy v. Prudential Insurance Co.*, 668 F.2d 795 (5th Cir. 1982). The Court might, therefore, certify a class as to this particular subpart of Plaintiffs' claims. However, it declines to do so for a number of reasons. First, as noted, such claim does not appear to be a predominant part of the Plaintiffs' individual claims. Second, the particular allegedly subjective criteria used by individual retail store supervisors to determine promotions to department manager positions do not appear, at first blush, to be wholly inappropriate or unduly subjective.[8] *Compare* with EEOC guidelines *cited in* Schlei, B. & Grossman, P., Employment Discrimination Law, at 178 n.42 (1976 ed.). Third, if the named Plaintiffs prevail and show that the criteria used by Defendants in determining promotions to the positions involved are discriminatory in operation, the Court has the power to fashion an appropriate injunctive remedy without the use of a class device, thereby benefitting those who would otherwise be class members without the possibility of adverse res judicata effect, should the named Plaintiffs not prevail on this claim.

■ Having determined that Plaintiffs' claims are basically disparate treatment claims, it follows that the only possibility of a class action here is for Plaintiffs to show, as suggested in *Falcon*, "significant proof" that the Defendants operated under a general policy of discrimination. —— U.S. —— n.15, 102 S.Ct. 2371 n.15. In a promotions case such as this one, significant proof of a general policy of discrimination should

---

**8.** In making this comment, the Court is indulging in the assumption that departmental managers in Defendants' retail stores in fact exercise some supervisory authority, noting that certain

of the criteria used in determining promotions to these positions appear to address the applicant's ability to supervise.

include proof of a number of instances in which the better qualified black employee was passed over for promotion by a less qualified white employee. The particular number of instances which would need to be shown, should, in the Court's opinion, bear some significant relationship to the number of promotions granted by the employer in the time frame selected for class definitional purposes. Additionally, it would seem that statistical evidence could be quite relevant.[9] Finally, it would appear that other evidence could be relevant to a determination of whether the employer operates under a general policy of discrimination, such as, for example, evidence of frequent use of racial slurs and epithets by management employees.

If counsel elect to proceed to attempt a showing that the Defendants herein operate under a general policy of discrimination, they are directed to first recast the class within the parameters required by the Court's holdings on Page 8 of this Order. The recast class should include subclasses for each "territory" represented. In addition, Plaintiffs are requested to provide information concerning the number of black employees in the recast class and each subclass. A description of the recast class, together with any brief of law and any offer of additional evidence which Plaintiffs might wish to present on the Motion to Certify Class shall be filed within 30 days of date of entry of this Order. Counsel are urged to set forth any offer of additional evidence in highly specific, non-conclusory fashion.

If Plaintiffs are able to make an offer of "significant proof" such as might satisfy *Falcon*, certain options are presented:

(1) The Court could certify the class, but permit individual employees to opt out (or possibly require an opt in). This procedure would give whichever side prevails the benefit of a classwide res judicata effect.

(2) The Court could defer making any determination on certification until the trial on the merits. This procedure would be the most effective way of determining whether the claims of the named Plaintiffs are truly representative of the claims of the absent class members. The disadvantage is that Defendants could not obtain any class-wide res judicata benefit if the claims of the named Plaintiffs failed, since the Court would not grant the motion to certify in that event.

Counsel for Plaintiffs is directed to address these options in their further brief, should Plaintiffs elect to pursue certification. Defendants' response is due within 20 days of date of receipt of Plaintiffs' brief.

---

**9.** In the instant case, the Court is uncertain whether relevant statistical information is available such as would bear on the claims of the possible class/subclasses as redefined herein. If Plaintiffs intend to use the "Fisher Exact Test" in recasting their data, they are requested to provide fuller explanations of exactly what such test is. Also, Plaintiffs are requested to explain what assumptions if any such test makes regarding the "promotable pool."