**Joyce MEIRESONNE and Toni Reedy, etc., Plaintiffs,**

v.

**MARRIOTT CORPORATION, Defendant.**

**No. 88 C 3716.**

United States District Court, N.D. Illinois, E.D.

Feb. 3, 1989.

Charles Barnhill, Jr., Sarah M. Siskind, Terri Finesmith Horwich, Davis, Barnhill and Galland, Chicago, Ill., for plaintiffs.

Gloria M. Postela, Wendy R. Vandenberg, Chadwell & Kayser, Ltd., Chicago, Ill., Carlton J. Trosclair, Mary Helen Medina, Marriott Corp., Bethesda, Md., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Joyce Meiresonne ("Meiresonne") and Toni Reedy ("Reedy") have sued Marriott Corporation ("Marriott"), charging sex discrimination in employment in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e to 2000e–17. Plaintiffs have moved under Fed.R.Civ.P. ("Rule") 23 for certification of a class consisting of certain female employees in Marriott's Food and Beverage ("F & B") division. For the reasons stated in this memorandum opinion and order, the motion is granted.

### Background

Meiresonne has been employed by Marriott since 1984 (after six years' experience in restaurant management elsewhere). At Marriott she started as a Restaurant Manager in Chicago, then served in that capacity in Lincolnshire and then most recently (in August 1988, after this lawsuit was under way) was offered and accepted a "cross-training"[1] position as a Catering Manager in Kansas City, Missouri. In

---

1. "Cross training" is a process in which an employee is transferred laterally to a different portion of the "discipline" (a term explained later in the text) for a brief period, to receive training in preparation for a promotion.

1986 and 1987 Meiresonne had turned down a number of offers of various other positions—but she characterizes those offers as Marriott's defensive positioning in anticipation of the lawsuit that has in fact ensued.

Reedy has been employed by Marriott since 1979 (with a year's break in service from 1980 to 1981). She began as a Lounge Supervisor and was promoted five months later to Lounge Manager. In 1985 she was transferred to the position of Assistant Restaurant Manager and five months later was promoted to Restaurant Manager. After three years in that position and a five month maternity leave, she has most recently been serving in the lower-rated position of Food Production Manager at Marriott's Downtown Chicago Hotel. Reedy has also turned down various other offers of positions (which she labels in the same way as Meiresonne).

Both plaintiffs have been exemplary employees. Each has consistently received "commendable" ratings from her supervisors.

Plaintiffs seek to represent a class of all female management employees, management trainees and supervisors employed by Marriott in its F & B discipline (one of the several "disciplines" into which the organization is divided on a functional basis). Such a broad class is justified, plaintiffs argue, by Marriott's highly centralized system of "manpower development." Its Mini–Manpower Planning Committee ("Committee") is responsible for promotions to all hotel management positions except Hotel General Manager. For the F & B discipline, its Committee comprises the F & B Staff Vice President and all of the F & B Regional Directors, a group of about ten men.

According to Marriott's Standard Operating Procedures,[2] Committee is responsible for recommending candidates for all positions in F & B from Assistant Restaurant Manager on up (SOP–7 at 2). Promotions are handled on a "one candidate" basis: Committee selects only a single candidate, whom the relevant officials in the hotel property having the job vacancy may accept or reject. If the people at the hotel property reject the candidate, the property must bear the further expenses of the interviewing and selection process. Depending on the level of the vacancy, those at the individual property have varying input as to the selection of the primary candidate, but in all cases Committee approval is required.

SOP–7 at 2 lists criteria for consideration in the candidate selection process, including (emphasis added):

1. mastery of required technical skills
2. management style (ability to successfully manage others)
3. suitability to particular hotel, i.e., experience, etc.
4. *subjective* factors may also be considered, such as:
   a. ability to work under pressure
   b. long-range growth potential
   c. compatibility with receiving hotel's management team

P.Mem. 9 [3] asserts the result of those subjective promotional practices has been the systematic exclusion of women from the top management and "feeder" positions in F & B. Plaintiffs offer statistical evidence (*id.* following page 8) showing large percentages of women in low-level positions, but ever-decreasing percentages as the level increases in importance.

P.Mem. 9 also claims Marriott's "manpower development policies" and training practices deny women the promotional opportunities given to similarly situated men. Finally, Marriott's work atmosphere is assertedly permeated by hostility toward women, including incidents of sexual harassment.

### *Class Certification* [4]

■ Certification of a class under Rule 23(c) is appropriate only if it satisfies all

---

2. Those procedures are set out in a document entitled Manpower Planning Process, Hotel Division, DP–SOP–7 ("SOP–7").

3. Memoranda tendered on the current motion will be identified "P.Mem.—" or "P.R.Mem.—"

for plaintiffs' submissions and "D.Mem.—" for Marriott's.

4. As with this opinion's use of the shorthand terminology ("numerosity," "commonality" and so on) that has developed for the criteria in this

four prerequisites of Rule 23(a) and at least one of the criteria of Rule 23(b). This opinion will go down the line in that order.

### *Rule 23(a)*

#### 1. *Numerosity*

Since July 1, 1980 [5] there have been over 800 female employees serving in management and management "feeder" positions (i.e., supervisors and trainees) in the F & B division. Though mere size is not the only determinant for the numerosity standard, the number involved here is of course far greater than courts have found clearly sufficient for certification purposes (see, e.g., this Court's opinion in *Armstrong v. Chicago Park District*, 117 F.R.D. 623, 627–28 (N.D.Ill.1987) (416 class members)).

Marriott does not quarrel with the adequacy of the sheer numbers involved *if* the claimed class is a proper one. Instead it counters that plaintiffs' description of the certifiable class is incorrect because (1) different procedures are used in promoting supervisors and management trainees, as opposed to F & B managers, and (2) no centralized process exists that affects all F & B promotion decisions.

Objections of that type are really inappropriate at this threshold stage, when this Court is responding to the mandate of Rule 23(c)(1) that certification should be addressed "[a]s soon as practicable after the commencement of an action brought as a class action." No court has "any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action" (*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed. 2d 732 (1974)). Plaintiffs have asserted, supported by Marriott's own documents,

that (1) there is a centralized board that utilizes a subjective decisionmaking process in making promotion recommendations and (2) that board plays *some* role in all F & B promotion decisions. Marriott's challenge to the accuracy of those characterizations, in which the parties quarrel about the meaning of and weight to be given to different evidentiary submissions, is clearly merits-oriented. If plaintiffs are right, the numerosity requirement is plainly met— and if they prove wrong on the merits, decertification or a revised certification is always available.

#### 2. *Commonality*

Commonality is not a demanding requirement: It calls only for the existence of at least one issue of fact or law common to all class members (*Armstrong*, 117 F.R.D. at 628).[6] In that respect *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986) teaches the existence of a discriminatory evaluation system applicable by one central group to all class members suffices for Rule 23(a) purposes.[7]

Plaintiffs have alleged and provided evidence of just such a centralized system. Again Marriott's objections to that showing, which really urge a preliminary minitrial on major aspects of the case's ultimate merits, must fail.

First Marriott contends there is no such centralized system. Though much the same argument has been rejected in the preceding section, it will be treated at greater length here—both (1) because the parties have expended vast amounts of time and money marshalling evidence on the point and (2) perhaps because the *Eisen* principle may not require a court to blind

---

area of law (terminology universally employed by the courts, though not literally present in the relevant Rule), this Court will also use "certification" to describe the determination that this action may be maintained as a class action.

**5.** That was 300 days before the filing of plaintiffs' charges with EEOC.

**6.** That may be contrasted with the Rule 23(b)(3) requirement that the common questions must predominate over the individualized ones.

**7.** Actually, *Rossini* found the *typicality* requirement (not commonality as such) was met. But in doing so the court (798 F.2d at 597) noted the teaching of *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 & n. 13, 102 S.Ct. 2364, 2370 & n. 13, 72 L.Ed.2d 740 (1984) that the requirements of commonality and typicality "tend to merge." Indeed, typicality most often subsumes commonality, for a plaintiff's claim must necessarily share at least some characteristics of the other class members' claims to be "typical" of them. *Falcon* accordingly focused on the typicality requirement.

itself to a patent deficiency in a class claim (say a situation in which the complaint's allegations are inherently incredible or are quickly and unquestionably seen to be false).

On its face the SOP evidences a promotion policy that affects all F & B managers, supervisors and trainees. Plaintiffs' evidence also shows that policy is incorporated into the entire promotional system in different ways at different levels. At the highest levels candidates' names are submitted by Committee members (P.R.Mem. 4–5), while at lower levels the names of candidates may be solicited from local F & B directors (*id.* 5–6).

Marriott disputes some of plaintiffs' characterizations, but nowhere does it deny that Committee plays a significant role in all relevant promotions (see Marriott's Chart, D.Mem. 10). Thus a centralized system exists that is common to all promotional opportunities available to the class. That satisfies the test exemplified by *Rossini.*

■ Marriott counters that the use of selection guidelines is not mandatory and, in fact, is rarely used. But that is a fact-intensive challenge that clearly goes to the merits of the claim and is barred by *Eisen* at this preliminary stage. That is equally true of Marriott's arguments that (1) the failure to post job opportunities is irrelevant and (2) the ultimate rejection of candidates by the top personnel at the individual properties negates the "centralized system" idea.

■ Next Marriott argues that "significant proof" of discrimination is required under *Falcon*, 457 U.S. at 159 n. 15, 102 S.Ct. at 2371 n. 15 and *Nation v. Winn–Dixie Stores, Inc.*, 95 F.R.D. 82, 86 (N.D. Ga.1982). But *Falcon* made that statement in the context of a plaintiff's (and trial court's) impermissible leap of faith in inference-drawing—there the single named plaintiff had complained about promotion policies that affected only employees and had alleged no facts as to hiring practices, yet the certified class had included *both* employees and rejected applicants.

Indeed, the very footnote—and very sentence—in which *Falcon* employed its "sig-

nificant proof" language also recognized the sustainability of class certification "if the discrimination manifested itself in hiring and promotion practices in the same general fashion, *such as through entirely subjective decisionmaking processes*" (*id.* with emphasis added). That is exactly what plaintiffs have tendered in support of their less ambitious task here: Their putative class is limited to employees, and the claimed discriminatory practice is limited to promotions via subjective decisionmaking.

No persuasive authority has called for the type of merits-type inquiry urged by Marriott in a case such as this. True enough, *Nation*, 95 F.R.D. at 87–88 did apply the *Falcon* "significant proof" requirement to claims that were "basically disparate treatment claims." But this Court need not here decide whether that represents a proper application or extension of *Falcon*, for plaintiffs' claims do not fit that description. Though their claims certainly have elements of disparate treatment (in particular, the assertions of pervasive sexual harassment), the core of their contentions involves both disparate treatment *and* disparate impact—Marriott's use of a highly subjective, facially neutral centralized decisionmaking process whose end result is the underrepresentation of women (*Watson v. Fort Worth Bank and Trust*, — U.S. ——, 108 S.Ct. 2777, 2786–87, 101 L.Ed.2d 827 (1988)).

Disparate impact cases require far less proof regarding specific incidents of discrimination (*Watson*, 108 S.Ct. at 2784–85). Certainly no stricter level of proof ought to be required at the threshold certification stage, nor should another vehicle be created for Marriott to contest the merits of the case at this early point in the litigation.

■ Finally Marriott argues plaintiffs have not submitted additional instances of discrimination in promotion against class members. Marriott invokes the demand in *Nation*, 95 F.R.D. at 88 that plaintiffs show:

> proof of a number of instances in which the better qualified [female] employee was passed over for promotion by a less qualified [male] employee. The particu-

lar number of instances which would need to be shown should, in the Court's opinion, bear some significant relationship to the number of promotions granted by the employer in the time frame selected for class definitional purposes. But once again it is significant that *Nation* was a disparate treatment case, and even there the court noted "statistical evidence could be quite relevant" (*id.*).

■ In this case plaintiffs have concentrated on statistical disparities, which may unquestionably form a valid basis for a disparate impact claim (*Watson*, 108 S.Ct. at 2785). Their data shows increasing underrepresentation of women in the higher ranks. Common sense dictates such evidence *alone* does not necessarily connote discriminatory promotional practices—for example, the disparity could be due to discriminatory hiring practices or, more innocently, merely to high male representation in the applicant pool. Here, however, plaintiffs also show that as to two high-level positions (F & B Director and Director of Restaurant Operations) only two of the 34 promotions since July 1, 1986 have gone to women.

For certification purposes the overall combination of (1) the underrepresentation of women in higher ranking management positions, (2) the low percentage of promotions of women to the highest positions and (3) evidence of pervasive sexual harassment is enough to indicate the entire class was subject to a central promotional system that had a discriminatory impact on women, if not an intentional discriminatory effect. Marriott's contrary evidence may most appropriately be considered when the merits of the case are dealt with—and once again if it turns out the class does not share common questions, Rule 23(c)(1) permits a fresh look at the matter.

3. *Typicality*

As n. 7 suggests, typicality almost certainly embraces commonality—but the converse does not necessarily apply. This portion of the opinion deals with Marriott's contention that Meiresonne's and Reedy's individual claims contain elements that are atypical of those of the proposed class.

Marriott argues that the offering of promotions to Meiresonne and Reedy—promotions that they rejected—renders them atypical. Plaintiffs counter that quite the opposite, Marriott's promotional offers are in fact indicative of the complained-of discrimination. They say:

1. Their offered promotions were "dead-end" offers that were disadvantageous for their careers.

2. Moreover, the timing of the offers indicates they were made only to position Marriott for the lawsuit it then expected—and has now gotten.

3. "Cross-training," gaining brief training in a collateral branch of the F & B discipline, is essential in the promotional track toward F & B director.

4. Marriott's practices deprive women of the opportunity for such essential cross-training.

If some or all of those things are true, plaintiffs' claims are certainly typical of the class. Once more, whether or not the denials of cross-training (1) are discriminatory or (2) affect promotional opportunities are issues to be resolved on the merits and not on the current motion.

■ Marriott also says Meiresonne's and Reedy's claims of retaliation are atypical. Plaintiffs advance a persuasive response: If that were a bar to certification, any defendant could insulate itself from a class action by retaliating against anyone who brought or threatened to bring a lawsuit. It remains for the future shaping of the litigation to see how any individual retaliation claims can be linked with the class claims. Unless and until a total unlinkage were forced to be made, however, the mere presence of retaliation claims should not be permitted to destroy plaintiffs' ability to represent the class.

Finally Marriott asserts plaintiffs' claims of sexual hostility are atypical. But P.R. Mem. 21–24 has chronicled about a dozen individual incidents of such discrimination, as well as expressions of general attitudes prevalent in the F & B area. Most importantly for purposes of typicality, plaintiffs are not claiming damages for all class members based on individual incidents of

 

sexual hostility. Instead they are alleging an atmosphere of sexual hostility that evidences discrimination. As said earlier, plaintiffs are not now called upon to provide conclusive proof of such an atmosphere.

### 4. *Adequacy of Representation*

Marriott's arguments of inadequacy of representation (D.Mem. 19–20) revolve primarily around plaintiffs' claimed atypicality. Because this opinion has just found typicality, those arguments are of no further moment.

Marriott also contends that because class members compete against *each other* for the same promotions, none can adequately represent the class. That absurd proposition would of course doom almost every *class* action charging discrimination in promotion—a drastic rewrite of the law in this area. After all, when *no* woman is promoted, it is impossible to determine which one should have been (see *Armstrong*, 117 F.R.D. at 627 & n. 10 and cases cited there). In the universe Marriott would create, discrimination law would be simpler because class-discriminatory promotion would be cost-free. That view must of course be rejected.

Finally no argument is made as to the ability of plaintiffs' counsel adequately to represent class interests. Their law firm has been a leader in the employment discrimination field since the firm's inception. It has broad experience and a history of quality performance, now including service on the employer's side as well (*Armstrong* is an example). This Court finds plaintiffs' counsel competent to perform their duties in representing the class.

### *Class Certification—Rule 23(b)(2)*

Marriott does not dispute that the plaintiff class qualifies under a branch of Rule 23(b), but to support certification this Court must make an affirmative finding in that respect too. Plaintiffs do challenge a systematic discriminatory promotional policy and ask for final injunctive or declaratory relief that will apply to the class. That directly tracks the standard set out in Rule 23(b)(2).

### *Conclusion*

Plaintiffs' class comports with all the strictures of Rule 23. It is therefore certified—or in the language of Rule 23(c)(1), this Court determines this action may be maintained as a class action for a class of all female management employees, management trainees and supervisors employed by Marriott in its Food and Beverage discipline on or since July 1, 1986.