**Jeanne STEFFIN, Plaintiff,**

v.

**FIRST CHARTER FINANCIAL CORPORATION, a California Corporation, and American Savings and Loan Association, a California Savings and Loan Association, Defendants.**

**Civ. No. 76–843–WPG.**

United States District Court, C. D. California.

Feb. 8, 1978.

Bersch & Kaplowitz, Blanche C. Bersch, Karen Kaplowitz, Joan P. Ostroy, Los Angeles, Cal., for plaintiff.

McKay & Byrne, Gail D. Solo, Los Angeles, Cal., for defendants.

## MEMORANDUM OF DECISION

WILLIAM P. GRAY, District Judge.

The plaintiff, a woman, brings this action against her former employer, charging discrimination against her and "other females similarly situated" because of sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2. She now moves the court to certify as a plaintiff class all women currently employed by the defendant and those who may become applicants for employment in the future.

The plaintiff was discharged by the defendant from her position as a staff attorney after service of about seven months. She has found other employment and therefore does not desire reinstatement. She prays for monetary damages for herself and the other alleged class victims of sex discrimination, injunctive relief for class members other than herself, and attorney's fees.

The affidavit submitted by the plaintiff in support of her motion contains a list of her grievances. Some of these allegations, if established, would be indicative of discrimination based upon sex. Others, however, are more ambiguous in their impact and could be inferred to have stemmed from a "chip on the shoulder" attitude that would reduce her desirability as an employee, regardless of sex. For example, she contends that her starting salary was lower than that of a male lawyer, Mr. Naylon, who was hired at the same time and who had less legal experience; that she was offered fewer stock options than was he; that Mr. Naylon was given a secretary before she received one; and that once she was permitted to engage a secretary, she was limited to hiring one at a lower salary than Mr. Naylon's secretary received. The plaintiff also complained that her immediate superior "required" her to make tea for him; that he would not permit her to "participate in discussions with top management," as did Mr. Naylon; and that her request to be permitted to attend a real estate transaction course in San Francisco was rejected.

The plaintiff, through her counsel, presented figures tending to show that the percentage of women in supervisory and managerial positions in the defendant company has been substantially below the percentage of women engaged in similar employment in the Los Angeles area work force. The defendant countered with the affidavits of several of its women employees who insisted that their indignation was so great at the very suggestion of sex discrimination on the part of their employer that they volunteered to submit their strong denials that any such practice existed.

The above-described circumstances appear to the court to present a dilemma: on the one hand, if there is a reasonable prospect that the defendant company has been engaging in discrimination against women, the matter should proceed as a class action, the plaintiff's counsel clearly being qualified to handle such litigation. On the other hand, if the action is instigated because of a personal animosity on the part of the plaintiff and a desire to "get even" with the defendant for having fired her, it would be unfair to put the defendant through the expense and trauma of a class action of this type, particularly in the absence of a showing that other purported class members harbored grievances of discrimination.

At the hearing on the motion to establish a class, the court expressed its concern, as discussed above, and requested plaintiff's counsel to submit additional affidavits tending to document more widespread contentions of discrimination. Counsel agreed so to do.

Five affidavits were presented in response to the court's request. One was from a woman that had unsuccessfully applied for a position as legal secretary. She stated that, because of her skills, she had the "feeling" that she would have been treated differently had she been a man. The defendant asserts that this affiant was not hired because she was overshadowed by another *woman* that was given the job.

Three affidavits undertook to establish that the employment agencies from whom the defendants have sought female employees were never asked to supply other than clerical workers. The defendant countered with the assertion that it uses other means of employing its professional staff.

The fifth affidavit came from a Ms. Spicer, who had formerly been employed by the defendant as an attorney. She asserted that she had been forced to move into a smaller office because of a subsequently hired male attorney; that she received less compensation than did men with comparable experience; and that she finally quit her job because of her dissatisfaction with the defendant's policies, including sex discrimination. The defendant submitted affidavits challenging these allegations.

This court is mindful of and in full accord with the admonition of our Court of Appeals that " . . . in determining whether an action alleging discriminatory employment practices shall be allowed to proceed as a class action, a trial court must consider the broad remedial purposes of Title VII and must liberally interpret and apply Rule 23 so as not to undermine the purpose and effectiveness of Title VII in eradicating class-based discrimination." *See, Gay v. Waiters' and Dairy Lunchmen's Union*, 549 F.2d 1330, 1334 (9th Cir. 1977).

However, even under such liberal interpretation, I cannot conclude that the showing made by the plaintiff demonstrates, or even suggests, that the plaintiff's claims of discrimination are shared by any substantial number of women that would be members of the purported class. In *White v. Gates Rubber Company*, 53 F.R.D. 412, 415 (D.Colo.1971), Chief Judge Arraj expressed the belief that the "typicality" requirement of Rule 23 "would seem to entail the necessity of demonstrating that there are other members of the class who have the same or similar grievances as the plaintiff. It seems apparent that a claim cannot be typical of the claims of a class if no other member of the class feels aggrieved." I think that such a view is clearly correct and that it is applicable to this case. The only person other than the plaintiff to acknowledge a similar complaint of discrimination was Ms. Spicer, and she is welcome to intervene as a plaintiff if so disposed.

A Title VII class action against an employer does give an aggrieved employee an opportunity for relief, but it also has a divisive tendency to create dissatisfaction where contentment previously had prevailed, which is contrary to the legitimate interests of all concerned. I am aware of the possibility that some employees may feel abused but are reluctant to speak up and risk the wrath of the employer. However, the actual absence of a commonly held feeling of discrimination and abuse would defeat the typicality required by Rule 23,

and it is unfair to the employer and destructive to good personnel relationships to proceed with a class action under the assumption that there must be some class members that share the plaintiff's unhappiness if only we could find them.

In the absence of a showing by the plaintiff that there is a class that desires representation, the plaintiff's motion for certification of a class is denied and the matter will proceed on behalf of the individual plaintiff.