Patricia SHEEHAN, Plaintiff,

v.

PUROLATOR, INC. and Purolator Courier Corp., Defendants.

Patricia SHEEHAN, Elizabeth Henoch and Kayhan Hellriegel, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

PUROLATOR, INC. and Purolator Courier Corp., Defendants.

Nos. 81 Civ. 1103, 82 Civ. 0438.

United States District Court,
E.D. New York.

Dec. 26, 1984.

Judith P. Vladeck, Vladeck, Waldman, Elias & Engelhard, P.C., New York City, for plaintiffs.

Colleen McMahon, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

This is an action for injunctive relief and damages brought by two former employees and one present employee of Purolator Courier Corporation ("Courier") against Courier and its parent corporation, Purolator, Incorporated (collectively referred to as "defendants").[1] The plaintiffs allege that the defendants engaged in a pattern or practice of discrimination against its female employees on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). The plaintiffs now move for certification of this action as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure. For the reasons that follow, plaintiffs' motion is denied.

## I. BACKGROUND

Plaintiffs seek certification of a class of all females who are presently employed, who subsequently become employed, and who have been employed by the defendants as exempt (*i.e.,* salaried) employees.[2] The parties agree that, with respect to former and current employees, the class should be limited to women employed by Courier on or since March 25, 1980, 300 days before plaintiffs filed their charges with the Equal Employment Opportunity Commission on January 19, 1981.

Plaintiffs collectively allege that defendants engage in a pattern or practice of discrimination against their female employees by, *inter alia:*

assigning them to non-exempt and lower-level exempt positions; assigning males to line positions (*i.e.,* those which involve management and decision-making authority) while restricting female exempt employees to staff positions (*i.e.,* those which are supportive of line positions and involve no management or decision-making responsibility); promoting females more slowly than similarly qualified males and by failing to promote them into positions with greater opportunity for advancement and training. Plaintiffs allege also that defendants pay females salaries lower than those paid to similarly qualified males and provide them with different and less favorable fringe benefits. Finally, plaintiffs contend that the defendants maintain and condone a working environment in which intimidation and sexual harassment of female employees is the normal condition of the workplace and that defendants retaliate against female employees who object to the discriminatory policies and practices.

Vladeck Aff. ¶ 3.

The individual plaintiffs are women who are, or have been, employed by defendants

---

**1.** Defendant Purolator, Incorporated ("Purolator") had earlier moved to dismiss the complaint as against it for lack of subject matter jurisdiction, and initially opposed certification of a class of its employees on the grounds that Purolator and its subsidiary, Courier, are separate and distinct corporations. On January 4, 1984, well after both the moving and answering papers had been filed for this motion, Purolator announced that it and Courier were consolidating their headquarters, and the executive officers of Purolator were assuming responsibility for their respective functions at Courier. Purolator subsequently withdrew its motion to dismiss, but still maintains that the plaintiffs would not adequately represent the claims of Purolator employees. The plaintiffs contend that they have not had the opportunity to conduct discovery with respect to the effects of the consolidation, and therefore "reserve the right" to seek certification of a class of Purolator employees at some future date. In light of the above, plaintiffs are granted leave to move for certification of a class of Purolator employees after the completion of appropriate discovery regarding the effects of Purolator's consolidation with Courier. On the present motion, the Court is only considering certification of a class of Courier employees.

**2.** While plaintiffs' complaint describes female applicants who have sought or may subsequently seek employment with defendants as potential class members, plaintiffs do not now seek to represent a subclass of applicants. Plaintiffs maintain, however, that should the Court certify a class, plaintiffs "reserve the right" to seek amendment of any certification order to include applicants for employment as class members.

in exempt positions. Plaintiff Elizabeth Henoch is currently employed as a Staff Vice President and Assistant Secretary of Courier. In recent years, she has functioned as a paralegal and licensed Interstate Commerce Commission ("ICC") practitioner, handling a variety of matters for Courier before the ICC. Henoch's primary complaint is that she has allegedly received a lower salary than similarly situated men, and that she has been subjected to demeaning treatment and harassment on account of her sex. She further alleges that her duties and responsibilities were removed in retaliation for her filing charges of discrimination with government agencies.

Plaintiff Patricia Sheehan, at the time her employment was terminated, was employed by Courier as a Staff Vice President, Administration, in charge of purchasing and office services. Sheehan alleges that she was discriminatorily denied both a transfer to a "line" position in the field and a promotion to Corporate Vice President For Purchasing, and that she was discriminated against in other terms and conditions of employment on account of her sex. She further alleges that she was harassed, her duties were removed, and she was eventually discharged on August 5, 1981, in retaliation for her filing sex discrimination charges against defendants.

Plaintiff Kayhan Hellriegel was employed by Courier as a Senior Regional Manager in Chicago. She claims that she was discriminatorily denied a promotion to Divisional Vice President after she refused the sexual advances of the individual making the selection. Hellriegel also alleges that she was subsequently subjected to harassment, and her responsibilities were reduced, until she felt compelled to resign her position.

The plaintiffs stated that they will primarily rely on statistical evidence to prove their prima facie case of discrimination on both the class and individual claims. Plaintiffs' Memorandum at 8. To this end, plaintiffs submitted a variety of statistics assessing the relative numbers of men and women in various exempt job titles at Courier, as well as statistics comparing the salaries and fringe benefits received by exempt male and female employees. Vladeck Aff. ¶¶ 60–72. Plaintiffs intend to "bolster" their statistical case with anecdotal evidence, such as the specific experiences of the named plaintiffs in this action. Plaintiff's Reply Memorandum at 14–15.

Defendants contend that this action cannot be maintained as a class action in light of the Supreme Court's decision in *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Defendants further contend that under Rule 23(a) of the Federal Rules of Civil Procedure, the named plaintiffs in this action cannot be certified as representatives of the proposed class. Lastly, the defendants argue that if any class is certified in this case, the class must be limited to the offices or areas where the named plaintiffs worked, and that the class should not include future employees who are not employed by Courier at the time of certification.

## II. TITLE VII CLASS ACTIONS AFTER FALCON

In *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), the Supreme Court held that a Title VII plaintiff, who alleged that he had been discriminatorily denied a promotion, could not maintain a class action on behalf of both employees who were denied promotions and applicants who were denied employment. In *Falcon*, the named plaintiff was a Mexican American whose only personal claim was for an allegedly discriminatory denial of a promotion. On the class claims, the plaintiff sought to bring a broad-based challenge to a wide variety of allegedly discriminatory employment practices. The district court certified a class of all hourly Mexican American employees and applicants for employment, relying on the Fifth Circuit's "across the board" doctrine, under which "any victim of racial discrimination in employment may maintain an 'across the board' attack on all unequal employment practices alleged to have been committed

by the employees pursuant to a policy of racial discrimination." 457 U.S. at 152–53, 102 S.Ct. at 2368, *citing Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122 (5th Cir.1969). The Fifth Circuit affirmed the district court.

The Supreme Court expressed agreement with the "proposition underlying the across the board rule—that racial discrimination is by definition class discrimination. But the allegation that such discrimination occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that can be certified." 457 U.S. at 157, 102 S.Ct. at 2370–2371. After analyzing the named plaintiffs' class claims under Rule 23(a), the Court concluded that the district court erred in certifying the class on the presumption that the plaintiff's claim was typical of the class claims. In particular, the Court noted that the plaintiff failed to satisfy the typicality and commonality requirements of Rule 23(a), since "[h]e attempted to sustain his individual claim by proving intentional discrimination" while trying to "prove the class claims through statistical evidence of disparate impact." *Id.* at 159, 102 S.Ct. at 2372. The Court emphasized that a "Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 161, 102 S.Ct. at 2373.

### A. *Disparate Impact or Disparate Treatment*

Plaintiffs contend that in the present case, both the individual and class claims can be considered under the "disparate impact" model of Title VII, and that disparate impact cases are still readily certifiable as class actions after *Falcon.* The decision in *Falcon* has been interpreted to have little effect on the certification of class actions in disparate impact cases. *Nation v. Winn-Dixie Stores, Inc.,* 95 F.R.D. 82, 86 (N.D. Ga.1982). Defendants concede that "[d]isparate impact cases are conducive to class action status because the facts pertinent to

each class member's claim are similar." Defendants' Memorandum at 28. It is therefore crucial to determine whether plaintiffs' individual and class claims may be characterized as "disparate impact" claims.

Disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but that, in fact, fall more harshly on one group than another and cannot be justified by business necessity.... Proof of discriminatory motive ... is not required under a disparate impact theory." *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335–36, n. 15, 97 S.Ct. 1843, 1854–55, n. 15, 52 L.Ed.2d 396 (1977). In a disparate treatment case, by contrast, the "employer simply treats some people less favorably than others because of their race, color, religion, sex or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *Id.*

Plaintiffs contend that they state claims under the disparate impact theory in that the "subjective practices and criteria applied by male Courier supervisors and decision makers are discriminatory barriers and that women have not been afforded equal opportunity in terms and conditions of employment...." Plaintiffs' Reply Memorandum at 11. Plaintiffs cite several cases which purportedly hold that the use of subjective practices and criteria in personnel decision-making can be evaluated under the disparate impact theory. In *Hung Ping Wang v. Hoffman,* 694 F.2d 1146 (9th Cir.1982), a GS–11 level civilian employee in the Army Corps of Engineers challenged the Corps' failure to promote him to any of three GS–12 level positions. The action challenged the validity of a promotion system whereby supervisors determined the hiring criteria for a job on an ad hoc basis. A committee then reviewed the candidates for the position, ranked them based on the stated criteria, and then forwarded names of the highly ranked candidates to the department supervisor for final selection. The Ninth Circuit noted that

the supervisors could manipulate the selection criteria to serve discriminatory purposes, and that "[s]ome seemingly objective criteria for hiring or promotion may have an inherently disproportionate impact." 694 F.2d at 1149. The court remanded the case for evaluation under the disparate impact theory.

Plaintiffs also rely on *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.,* 690 F.2d 88 (6th Cir.1982), where the plaintiff's former employer refused to rehire the plaintiff following a layoff. For hiring new employees, the employer required that the company's personnel manager, production superintendent, production manager and production foreman all examine the applicant's experience, training, references and appearance. The determination of whether to rehire former employees was left solely to the discretion of the foreman, for whom no guidelines were set forth. The Sixth Circuit held that employment decisions based on such subjective criteria could be analyzed under the disparate impact theory. *Id.* at 93.[3]

The defendants cite *Pouncy v. Prudential Insurance Co. of America,* 668 F.2d 795 (5th Cir.1982) as standing for the contrary view that subjective employment practices are not suitable for disparate impact analysis. In *Pouncy,* the plaintiff attempted to challenge three employment practices under the disparate impact theo-

ry: (1) the failure to post job vacancies; (2) the policy of promotion from within; and (3) the use of subjective criteria in employment evaluations. The Fifth Circuit explained that the

> disparate impact model applies only where an employer has instituted a specific procedure, usually a selection criteria for employment, that can be shown to have a causal connection to a class imbalance in the work force.

*Id.* at 808. The court held that the disparate impact model was not appropriate in that case because the plaintiff had not shown "that a facially neutral employment practice ... falls more harshly on black employees." *Id.* at 801. The Fifth Circuit subsequently interpreted *Pouncy* as holding that Title VII challenges to subjective employment practices may not be evaluated under the disparate impact model. *Carpenter v. Stephen F. Austin State University,* 706 F.2d 608, 620 (5th Cir.1983).[4]

■ As the above cases demonstrate, there is a conflict between the circuits as to whether the disparate impact model can be used to evaluate subjective employment practices. While there is no clear law on this issue in the Second Circuit, that court has indicated that it may follow the *Pouncy* approach. In *Zahorik v. Cornell University,* 729 F.2d 85 (2d Cir.1984), the court stated that the "disparate impact theory has been used mainly in the context of

3. Plaintiffs also cite *Grant v. Bethlehem Steel Corp.,* 635 F.2d 1007 (2d Cir.1980), *cert. denied* 452 U.S. 940, 101 S.Ct. 3083, 69 L.Ed.2d 954 (1981), as standing for the proposition that a subjective employment practice, word of mouth hiring, was appropriately analyzed under the disparate impact theory. A careful reading of that case reveals that the claim arising from word of mouth hiring was evaluated under the disparate treatment theory, while the employer's facially neutral requirement that experienced foremen be hired before inexperienced foremen was evaluated under the disparate impact theory. *Id.* at 1017. I also find that the plaintiffs' citation to *Connecticut v. Teal,* 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982) is inapposite. The plaintiffs quote two passages from that opinion, out of context, to reach the tenuous conclusion that the Supreme Court "has recognized that barriers to equal employment opportunity are to be analyzed in terms of disparate

impact." Plaintiffs' Reply Memorandum at 11. This statement, if true, would completely obfuscate the distinction between the disparate impact and disparate treatment theories, since any form of disparate treatment could be viewed as a "barrier to equal employment opportunity." I do not believe that the Supreme Court intended to so blur the distinction between the two theories that it carefully set forth in *International Brotherhood of Teamsters,* 431 U.S. at 335–36, n. 15, 97 S.Ct. at 1854–55, n. 15.

4. Two other circuits have also recently applied the disparate treatment theory to Title VII claims arising from the use of subjective employment practices. *See Craik v. Minn. State Univ. Board,* 731 F.2d 465 (8th Cir.1984); *Lilly v. Harris-Teeter Supermarket,* 720 F.2d 326 (4th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2154, 80 L.Ed.2d 539 (1984).

quantifiable or objectively verifiable selection criteria which are mechanically applied and have consequences roughly equivalent to results obtaining under systematic discrimination." *Id.* at 95. The court cited *Pouncy* for the proposition that "[p]laintiffs who allege a forbidden disparate impact are required to prove a causal connection between the challenged selection criterion and the disparate impact itself...." *Id.* The court found that the plaintiffs, who challenged the subjective criteria used for university tenure evaluations, failed to show that the challenged procedures produced any discriminatory effects: "evidence of systematic exclusion by the mechanical application of facially neutral criteria is necessary." *Id.* at 96. *Zahorik* suggests that in the Second Circuit, subjective employment practices can rarely, if ever, be challenged under the disparate impact theory.

However, even if *Hung Ping Wang* and *Rowe* were to be followed in this circuit, they are distinguishable from the present case. Neither case was a class action. In both cases, the plaintiffs attacked a specific selection procedure for promotion or hiring at a single level: in *Hung Ping Wang* it was the procedure for a grade GS–11 to GS–12 promotion, and in *Rowe*, it was the procedure for hiring entry-level production employees. In the present case, plaintiffs are challenging employment decisions in areas such as promotion, training, transfer and compensation, made at all levels in the company's exempt workforce. Given the broad variety of employment decisions being challenged, it is impossible to identify "quantifiable or objectively verifiable selection criteria," *Zahorik*, 729 F.2d at 95, that would justify disparate impact analysis for both the individual and class claims in this case. Accordingly, the appropriateness of

class certification in this case must be determined within the context of the disparate treatment model.

### B. *Class Certification in Disparate Treatment Cases*

■ Defendants contend that after *Falcon*, disparate treatment Title VII cases are "inherently inappropriate" for class action status, and therefore the present action cannot be maintained as a class action. This contention is contradicted by both the plain language of the *Falcon* decision and the numerous post-*Falcon* cases that have considered class certification in disparate treatment cases.

The primary significance of the *Falcon* holding, as conceded by defendants,[5] is that plaintiffs in Title VII class actions, like plaintiffs in all class actions, must meet the requirements of Rule 23(a). Defendants seek to expand this holding into a per se rule that disparate treatment Title VII cases should never be certified as class actions. However, the Supreme Court rejected such a per se approach by indicating in *Falcon*, that under certain circumstances, disparate treatment cases could be certified as class actions: "Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decisionmaking processes." 457 U.S. at 159, n. 15, 102 S.Ct. at 2371–72, n. 15.

Numerous courts since *Falcon* have considered the question of whether to certify class actions in disparate treatment cases. Some courts have certified class actions in such cases,[6] while other courts have denied

---

5. Defendants' Memorandum at 24.

6. *See Craik v. Minn. State Univ. Board,* 731 F.2d 465 (8th Cir.1984); *Lilly v. Harris-Teeter Supermarket,* 720 F.2d 326 (4th Cir.1983), *cert. denied* —— U.S. ——, 104 S.Ct. 2154, 80 L.Ed.2d 539 (1984); *Richardson v. Byrd,* 709 F.2d 1016 (5th Cir.), *cert. denied sub nom. Dallas County Comm'ners Court v. Richardson,* —— U.S. ——,

104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *Carpenter v. Stephen F. Austin State University,* 706 F.2d 608 (5th Cir.1983); *Paxton v. Union National Bank,* 688 F.2d 552 (8th Cir.1982) *cert. denied* 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983); *Brown v. Eckerd Drugs, Inc.,* 564 F.Supp. 1440 (W.D.N.C.1983); *Johnson v. Montgomery County Sheriff's Dep't,* 99 F.R.D. 562 (M.D.Ala.1983).

class certification.[7] None of those courts adopted defendants' contention that disparate treatment cases are inherently inappropriate for class action status. To the contrary, both the Fifth and Ninth Circuits, in cases denying class certification, recognized that even "across the board" class actions could be maintained if there is significant proof of a general policy of discrimination. *Vuyanich v. Republic National Bank of Dallas*, 723 F.2d 1195, 1199 (5th Cir.1984), *cert. denied* —— U.S. ——, 105 S.Ct. 567, 83 L.Ed.2d 507 (1984); *Jordan v. County of Los Angeles*, 713 F.2d 503, 504 (9th Cir.1983), *amended* 726 F.2d 1366 (9th Cir.1984). In all of these post-*Falcon* cases, the courts analyzed the class and individual claims under Rule 23(a) before determining whether to grant or deny class certification. Thus, the clear import of *Falcon* is not that disparate treatment claims are inherently unsuitable for class certification, but that "a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Falcon*, 457 U.S. at 161, 102 S.Ct. at 2373.

## III. RULE 23 ANALYSIS

### A. *The Existence of an Aggrieved Class*

■ The individual plaintiffs must satisfy four prerequisites to maintain a class action: numerosity, commonality, typicality and adequacy of representation. Fed.R. Civ.P. 23(a).[8] Plaintiffs in a class action have the burden of establishing that the requirements of Rule 23(a) have been satisfied. *Greeley v. KLM Royal Dutch Airlines*, 85 F.R.D. 697, 700 (S.D.N.Y.1980). In the context of a Title VII class action, the Supreme Court has explained that:

Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims. For respondent to bridge that gap, he must prove much more than the validity of his own claim.

*Falcon*, 457 U.S. at 157–58, 102 S.Ct. at 2371. Thus in *Falcon*, the Court held that it was error for the district court to presume that the individual plaintiff's claim was typical of other claims against the plaintiff's employer. *Id.* at 158, 102 S.Ct. at 2371.

To "bridge" this conceptual gap, courts in Title VII actions after *Falcon* have required that the individual plaintiffs establish that there are aggrieved persons in the purported class, primarily through affidavits from employees alleging discriminatory treatment, or other evidence establishing the existence of an aggrieved class. *See Grant v. Morgan Guaranty Trust Co. of New York*, 548 F.Supp. 1189, 1193 (S.D. N.Y.1982); *Warren v. ITT World Communications*, 95 F.R.D. 425, 429–30 (S.D.N.Y. 1982); *Hawkins v. Fulton County*, 95 F.R.D. 88, 93 (N.D.Ga.1982); *Nation v. Winn-Dixie Stores, Inc.*, 95 F.R.D. 82, 88 (N.D.Ga.1982); *Benson v. Little Rock Hilton Inn*, 30 Empl.Proc.Dec. (CCH) ¶ 33,188 (E.D.Ark.1982). The number of aggrieved employees so identified must bear some statistically significant relationship to the size of the relevant parts of the employer's work

---

**7.** *See Gilchrist v. Bolger*, 733 F.2d 1551 (11th Cir.1984); *Ekanem v. Health and Hosp. Corp. of Marion County*, 724 F.2d 563 (7th Cir.1984) *cert. denied* —— U.S. ——, 105 S.Ct. 93, 83 L.Ed.2d 40 (1984); *Vuyanich v. Republic National Bank of Dallas*, 723 F.2d 1195 (5th Cir.1984); *Jordan v. County of Los Angeles*, 713 F.2d 503 (9th Cir. 1983), *amended* 726 F.2d 1366 (9th Cir.1984).

**8.** Rule 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

force. *Nation*, 95 F.R.D. at 88; *Hawkins*, 95 F.R.D. at 93. Even prior to *Falcon*, some courts refused to certify Title VII class actions where the plaintiffs had failed to produce affidavits or other evidence establishing the existence of an aggrieved class. *See Wright v. Stone Container Corp.*, 524 F.2d 1058, 1062 (8th Cir.1975); *Richardson v. Restaurant Marketing Associates, Inc.*, 83 F.R.D. 268, 270 (N.D.Cal.1978); *Steffin v. First Charter Financial Corp.*, 77 F.R.D. 498, 500 (C.D.Cal.1978).

In the present case, the plaintiffs have submitted an affidavit from only one aggrieved employee, other than the three named plaintiffs, to establish the existence of a class of aggrieved individuals that contains some indeterminate number of members in excess of 315 persons. Plaintiffs' Memorandum at 6. Plaintiffs also rely on two forms of statistics to establish the existence of an aggrieved class: (1) statistics on the number of Courier employees who have "complained" of employment discrimination; and (2) statistics comparing the relative number of men and women in various job titles at Courier, as well as statistics comparing the salaries and fringe benefits received by exempt male and female employees.

■ As to the first type of statistics, plaintiffs claim that 56 female Courier employees, other than the named plaintiffs, "have complained of unequal treatment, harassment or retaliation." Vladeck Affidavit ¶ 73. Defendants persuasively argue, however, that upon close scrutiny, these statistics do not establish the existence of an aggrieved class. Defendants claim that only eight of the 56 complaints were brought by members of the proposed class of exempt employees. Of those eight complaints, only five resulted in formal complaints filed with governmental agencies. One of these five complaints was filed by a male employee alleging sexual harassment, and another was filed before March 25, 1980, the earliest date for inclusion in the proposed class. Therefore, neither of these complaints encompassed a potential class claim. Of the three remaining complaints, two were allegedly dismissed for lack of probable cause to sustain the allegation of employment discrimination. Cohen Affidavit ¶¶ 8–12; Defendants' Memorandum at 82. Plaintiffs have not attempted to rebut defendants' analysis of these statistics. *See* Plaintiffs' Reply Memorandum at 18. Given the ambiguities regarding the accuracy and meaning of these statistics, it was incumbent upon plaintiffs to explain the specifics of the purported discrimination complaints. *Benson*, 30 Empl.Prac.Dec. (CCH) ¶ 33,188, at 27,704. Since plaintiffs have failed to do so, these statistics cannot be relied upon to establish the existence of class claims.

■ Plaintiffs also rely on statistics comparing the job titles, salaries and fringe benefits received by exempt male and female employees at Courier. These raw statistics do not, by themselves, establish that there is an aggrieved class of female employees. *Grant*, 548 F.Supp. at 1192 n. 6. The statistics do not offer the relevant comparisons of similarly situated female and male employees (i.e., females and males with the same qualifications and experience), *Pegues v. Mississippi State Employment Service of Mississippi Employment Sec. Comm'n*, 699 F.2d 760, 766–67 (5th Cir.1983), nor do the statistics alone indicate that other female employees feel aggrieved. *Steffin*, 77 F.R.D. at 500. Affidavits from individual employees are needed to flesh out these statistics by particularizing instances where females were discriminated against in favor of similarly situated males. The plaintiffs have failed to provide such affidavits.

■ It is noteworthy that the defendants specifically mentioned the need for affidavits in their Memorandum, but the plaintiffs responded by providing only one affidavit from an aggrieved female employee. The plaintiffs' attorney explained at oral argument that this deficiency was due to the fear that employees who submitted affidavits might be subject to retaliation. Tr. of Oral Argument at 15. While the plain-

tiffs' concern for the vulnerability of these employees is understandable, this concern must be balanced against the policies embodied in the *Falcon* decision and Rule 23(a). *Cf. Steffin*, 77 F.R.D. at 500–01 (discussing the balance of considerations between employees' fears of retaliation and the Rule 23(a) requirements). This Court cannot certify a Title VII class action without specific proof of the "existence of a class of persons who have suffered the same injury" as the plaintiffs. *Falcon*, 457 U.S. at 157, 102 S.Ct. at 2371. The appropriate mechanism to redress plaintiffs' fears of retaliation is not the certification of class actions on the basis of unsubstantiated class claims, but the statutory protection accorded Title VII claimants under 42 U.S.C. § 2000e–3.

In conclusion, the plaintiffs have failed to sufficiently demonstrate the existence of an aggrieved class. The plaintiffs' motion for class certification must therefore be denied. However, even if the plaintiffs sufficiently demonstrated the existence of an aggrieved class, the named plaintiffs in this action are not appropriate representatives of a class of all exempt female employees at Courier.

### B. *Appropriateness of the Class Representatives Under Rule 23(a)*

#### 1. *Elizabeth Henoch*

Henoch was hired by Courier as a secretary in 1967. During the first eleven years of her employment at Courier, Henoch enjoyed a steady series of promotions: to Assistant Manager of the Commerce Department in 1968, to Manager of the Commerce Department in 1971, to Staff Assistant Vice President in the Legal Department in 1975, and to Staff Vice President in the Legal Department in 1978. She was also elected Assistant Secretary of the Corpora-

tion in 1972. Henoch's salary increased from $100 per week in 1967 to $38,000 per year in 1982. Henoch's job was transferred to the Finance Department in March 1983. McMahon Aff. ¶¶ 9, 15.

During the course of her employment, Henoch became primarily responsible for preparing and filing Courier's applications for interstate motor carrier operating authority and tariff approvals with the ICC. In 1977, she became a licensed ICC practitioner. Vladeck Aff. ¶¶ 11–12; Delany Aff. ¶¶ 3–8. Henoch contends that despite her officer's title and responsibilities, her salary did not "keep pace with that of any of the men of comparable responsibility or status." Vladeck Aff. ¶ 12.

Henoch complains that she has been subjected to harassment and stripped of her job functions in retaliation for filing charges of discrimination with governmental agencies. In particular, she contends that she has received unwarranted criticism of her job performance, she has been subjected to verbal abuse by her supervisor, she lost the services of her secretary, and much of her work has been reassigned to other employees. Vladeck Aff. ¶¶ 14–15. Defendants contend that Henoch's job performance has deteriorated since 1978, and that the reduction of her responsibilities was the result of both deregulation of the trucking industry since 1978 and Courier's acquisition of "general commodity authority," precluding the need for numerous ICC applications. Delany Aff. ¶ 10–32.

▮▮▮ In light of this employment history, Henoch's claims do not meet the commonality or typicality requirements necessary to qualify her as a class representative under Rule 23(a).[9] First, the interests inherent in Henoch's status as a high level employee render her an inappropriate rep-

---

**9.** The Supreme Court has noted that:

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the

> class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

457 U.S. at 157–58 n. 13, 102 S.Ct. at 2371 n. 13.

resentative for a class that includes *all* female exempt employees of Courier. *Rowe v. Bailar*, 26 FEP Cases (BNA) 1145, 1146–47 (D.D.C.1981); *Odom v. U.S. Homes Corp. of Texas*, 76 F.R.D. 381, 383 (S.D.Tex.1975); *Fujita v. Sumitomo Bank of California*, 70 F.R.D. 406, 410 (N.D.Cal. 1975). *See also Gilchrist v. Bolger*, 733 F.2d 1551, 1554 (11th Cir.1984) (nonsupervisory employee could not adequately represent a class of supervisory employees); *Lo Re v. Chase Manhattan Corp.*, 431 F.Supp. 189, 197–98 (S.D.N.Y.1977) (plaintiffs in professional, managerial or official positions could not adequately represent employees in lower graded positions).[10] Similarly, Henoch's success in achieving a high level position and relatively high salary belies the typicality of her claims when compared with the claims of lower level employees who believe that they were discriminatorily denied such opportunities. *Rowe v. Bailar*, 26 FEP Cases (BNA) at 1147; *Ricks v. Schlesinger*, 24 FEP Cases (BNA) 694, 696 (D.D.C.1979).

Of particular relevance to this case is the decision in *Rowe v. Bailar*. The plaintiff in

that case, Yancey Rowe, was a high level managerial and supervisory postal service employee, grade PES–26, who complained about the postal service's failure to promote him to higher level positions. The plaintiff sought to represent a class of all black employees who were discriminated against by various practices relating to promotion and training. A magistrate certified a class of employees at grade PES–17 and above. On appeal, the district court held that *Rowe* could not even represent the narrower class of employees at grade PES–17 and above:

> Rowe is an individual whose progress through promotions to a high managerial level has been excellent and who alleges discrimination as to promotion to specialized executive positions above that level. His experience at the Postal Service is hardly typical of the widespread acts of discrimination he wishes to attack on behalf of the class.

26 FEP Cases at 1147.[11]

In the present case, Henoch is a high level employee who seeks to challenge a

---

**10.** The defendants contend that simply by virtue of being a corporate "officer," Henoch is barred from acting as a class representative of exempt female employees, citing *Rossini v. Ogilvy & Mather*, 80 F.R.D. 131 (S.D.N.Y.1978). This argument, which emphasizes form over substance, is not persuasive. The defendants admit that Henoch's title, "Staff Vice President," is equivalent to the non-officer title of "Director." In the wake of the corporate reorganization of Courier, "[e]xempt employees who would have once been given the title of 'Staff Vice President' are now being given the title of 'Director;' no new Staff Vice Presidents are being named." McMahon Aff. ¶ 24. The functionally insignificant fact that Henoch is given the title of "Staff Vice President" rather than "Director" should not alone determine her suitability as a class representative. Furthermore, defendants' citation to *Rossini* is inapposite. In *Rossini*, the court held that a Vice President of a corporation could not properly represent the interests of a class of the corporation's employees. The court reasoned that the plaintiff in that case had an inherent conflict of interest with the class members because the plaintiff was empowered to bind the corporation to any action "in the ordinary course of business which the [board of] directors can authorize or ratify." 80 F.R.D. 135–36. The court further found that the plaintiff was obligated to assure "compliance by the cor-

poration with proper personnel policies and lawful hiring and promotion practices." *Id.* at 135. In the present case, by contrast, there is no indication that Henoch had the power to bind Courier by any actions, except perhaps in matters before the I.C.C. Nor is there any indication that Henoch had obligations with respect to the formulation or implementation of Courier's personnel policies and practices. Accordingly, Henoch does not have the same inherent conflict of interest with class members as did the plaintiff in *Rossini*. For the same reasons, *Rossini* is also inapplicable to the question of Sheehan's suitability as a class representative. See Section III.B.2., *infra*.

**11.** The plaintiff argues that *Rowe* is distinguishable from the present case because Rowe received "favored treatment" from his employer and he asserted general and vague claims of discrimination. There is no indication in the *Rowe* opinion that Rowe received "favored treatment." Furthermore, Rowe made specific allegations for his personal claims, 26 FEP at 1147 n. 10, but made general and conclusory class claims. *Id.* at 1146. Likewise in the present case, Henoch has particularized her individual claims, but the plaintiffs have failed to identify specific acts of discrimination with respect to the class claims. *See* the discussion in Section III. A, *supra*. *Rowe* is not, therefore, distinguishable from the present case.

variety of discriminatory practices with respect to salary, promotion and other terms and conditions of employment. Yet she seeks to represent a class that is even broader than the class rejected in *Rowe*. The proposed class of female exempt employees includes employees at many levels in the corporate hierarchy, ranging from secretaries and customer service representatives to officers and professionals like Henoch herself. Defendants' Supplementary Memorandum at 13. *See also* Vladeck Aff. ¶ 47 (listing "natural lines ... of progression" at Courier which include such positions as management trainee, sales representative, courier guard, etc.). The interests of secretaries and customer-service representatives may not be co-extensive with the interests of a Staff Vice President or Director. Nor can it be assumed that the same practices and criteria are applied to employment decisions involving low level and high level employees.

Henoch is also an inappropriate class representative because of the particularly unique circumstances of her employment. Until after commencement of the present action, Henoch was the highest ranking and highest paid non-lawyer in the Legal Department at Courier. Delany Aff. ¶ 25. Her job entails the use of specialized paraprofessional training. The trial of her claims regarding the alleged removal of her responsibilities will necessarily focus on the effects of deregulation in the trucking industry and Courier's acquisition of general commodity authority. Such facts are not related to any of the class claims. An employee who occupies a special position and whose claims of discrimination involve unique defenses is not an appropriate class representative for allegations of systematic discrimination. *See Williams v. Boorstin*, 451 F.Supp. 1117, 1124 (D.D.C. 1978), *rev'd on other grounds*, 663 F.2d 109 (D.C.Cir.1980), *cert. denied* 451 U.S. 985, 101 S.Ct. 2319, 68 L.Ed.2d 842 (1981); *Martin v. Easton Pub. Co.*, 73 F.R.D. 678, 681 (E.D.Pa.1977); *Odom v. U.S. Homes of Texas*, 76 F.R.D. 381 (S.D.Tex.1975).

Lastly, Henoch's claim that she has been the victim of retaliation for filing charges of employment discrimination is not suitable for class treatment. A claim of retaliatory treatment, requiring proof of facts unique to the particular plaintiff, "is clearly not a class issue.... Indeed, preoccupation with peculiar retaliatory wrongs allegedly done to one may well make such a person an inadequate representative of the class." *Strong v. Arkansas Blue Cross & Blue Shield, Inc.*, 87 F.R.D. 496, 511 (E.D. Ark.1980). *See also Pendleton v. Schlesinger*, 73 F.R.D. 506 (D.D.C.1977), *aff'd sub nom. Pendleton v. Rumsfeld*, 628 F.2d 102 (D.C.Cir.1980); *Williams*, 451 F.Supp. at 1124. Furthermore, plaintiffs have failed to show that any female employees, other than the named plaintiffs in this action, have suffered from retaliatory treatment. Accordingly, Henoch's claims of retaliatory treatment do not present common questions of law or fact with the class claims.

### 2. *Patricia Sheehan*

Sheehan was hired by Courier in 1971 as an office manager in its corporate headquarters. Like Henoch, Sheehan enjoyed steady promotions in her early years of employment—she was promoted to Staff Assistant Vice President in 1975 and to Staff Vice President in charge of purchasing and office services in 1977. Sheehan earned a starting salary with Courier of $12,000 per year in 1971 and was earning $28,000 per year when her employment was terminated in 1981. McMahon Aff. at ¶ 3.

Sheehan claims that from "early in her employment" she was denied opportunities to move from a "staff" position at corporate headquarters to a "line" position at a field location. She alleges that line positions provide better opportunities for advancement and salary increases, but such positions are discriminatorily denied to female employees at Courier. Sheehan further alleges that female employees were subjected to other forms of discrimination in terms and conditions of employment.

In January 1981, Sheehan and other women at Courier filed charges with the Equal Employment Opportunity Commission ("EEOC") alleging classwide discrimination. Sheehan claims that after these charges were filed, she was subjected to various forms of retaliation, including abusive language from her supervisor, excessive supervision as to her whereabouts, pressure to repay a loan before its due date, and a reorganization of her job duties which she contends amounted to a stripping of her responsibilities and a demotion. Sheehan further claims that she was unlawfully discriminated against in the denial of a promotion to the newly created position of Corporate Vice President in charge of purchasing.

Sheehan subsequently filed additional charges with the EEOC alleging unlawful retaliation and, at the same time, petitioned this Court for a preliminary injunction reinstating her to her former position, and ordering all retaliatory conduct to cease. After two evidentiary hearings and one appeal regarding this application, preliminary injunctive relief was ultimately denied by Judge Nickerson on August 25, 1981, upon a finding that Sheehan had failed to establish a likelihood of success on the merits.

The facts surrounding Sheehan's termination are well summarized in an earlier Memorandum and Order of this Court:

[A]n officer of [Courier], Paul Wolfrum, testified that the change in [Sheehan's] duties were part of a corporate reorganization initiated for the purpose of centralizing all purchasing under one person. . . . Because of the plaintiff's complaints that she did not understand what her new job duties were, a meeting between the plaintiff and Mr. Wolfrum was arranged for August 5, 1981. At the outset of the meeting, Mr. Wolfrum attempted to ask the plaintiff questions about a job description she had prepared. After only a few questions, the plaintiff stated that she did not wish to attend the meeting. Mr. Wolfrum responded that he was preparing to put her job duties in writing, and held up a pad on which he was making notes. Nonetheless, over Mr. Wolfrum's objection, the plaintiff left the meeting.

Mr. Wolfrum and a co-worker then went to the plaintiff's office and asked her to return to the meeting, which she agreed to do. They resumed their conversation about the plaintiff's duties, but again the plaintiff objected—claiming it was harassment—and she again walked out of the meeting over Mr. Wolfrum's objections.

Once more, Mr. Wolfrum went to the plaintiff's office and asked her to return to the meeting, but she refused. The plaintiff replied that she did not wish to attend the meeting, and Mr. Wolfrum responded that if she did not return he would have no alternative but to terminate her. The plaintiff replied, "Then I am terminated."

*Sheehan v. Purolator Courier Corp.,* 81 Civ. 1103, slip op. (E.D.N.Y. Oct. 27, 1982).

Sheehan has basically alleged four types of claims: (1) that she was denied a transfer from a staff to a line position on account of her sex; (2) that she was denied a promotion to Corporate Vice President because of her sex and in retaliation for her complaints of sex discrimination; (3) that she was otherwise discriminated against in terms and conditions of employment on account of her sex; (4) that she was harassed, stripped of her duties and eventually discharged in retaliation for filing charges of sex discrimination with the EEOC.

For the reasons discussed with respect to Henoch, Sheehan is not an appropriate class representative for claims of discrimination in the denial of promotions, and other terms and conditions of employment. Sheehan, like Henoch, was a Staff Vice President, a relatively high level position within the broad range of positions encompassed by the proposed class of all female exempt employees. She challenges the denial of a promotion to an even higher level position as an officer of Courier. The interests of an employee holding a high level position, the success of the employee in

achieving such a position, and her experience in being denied a promotion to an even higher level position, render the employee an inappropriate class representative for other employees claiming discrimination at the lower end of the corporate hierarchy. See the discussion in Section III, B.1, *supra*.

These same factors make Sheehan an inappropriate class representative for claims of discriminatory denial of transfers from staff to line positions. The considerations that underlie a decision regarding a lateral transfer from an upper level staff position to an equivalent line position are "hardly typical" of the considerations underlying a staff to line transfer between lower level positions, such as secretary or customer service representative. *Cf. Rowe*, 26 FEP Cases at 1147 (claim of an upper level employee denied a promotion is "hardly typical" of claims of lower level employees). Furthermore, plaintiffs have failed to identify even one other female employee who was allegedly denied a staff to line transfer for discriminatory reasons. Sheehan, therefore, cannot represent a class of female exempt employees allegedly denied such transfers.

Sheehan is also not an appropriate class representative with respect to claims of retaliatory treatment and discharge. As discussed earlier, claims of retaliatory treatment, which require proof of highly individualized facts, generally do not present suitable issues for class actions. *Pendleton v. Schlesinger*, 73 F.R.D. 506 (D.D.C.1977); *aff'd sub nom. Pendleton v. Rumsfeld*, 628 F.2d 102 (D.C.Cir.1980); *Strong v. Arkansas Blue Cross & Blue Shield, Inc.*, 87 F.R.D. 496, 511 (E.D.Ark. 1980); *Williams v. Boorstin*, 451 F.Supp. 1117, 1124 (D.D.C.1978), *rev'd on other grounds* 663 F.2d 109 (D.C.Cir.1980), *cert. denied* 451 U.S. 985, 101 S.Ct. 2319, 68 L.Ed.2d 842 (1981). Indeed, the peculiar facts surrounding Sheehan's claim of retaliatory discharge may render her an inappropriate representative for any class claims. *See Strong*, 87 F.R.D. at 511. Sheehan's claim of retaliatory discharge has been challenged with a defense of insubordina-

tion. Defendants allege that she was discharged for leaving a meeting called to redress her grievances and refusing to return to the meeting after she was requested to do so. This Court already found, when ruling on defendants' motion for summary judgment, that "insubordination was the immediate motivating factor for [Sheehan's] termination," but a factual issue remains for trial as to "whether this was the *sole* motivating factor." *Sheehan v. Purolator Courier Corp.*, 81 Civ. 1103, slip op. at 10 (E.D.N.Y. Oct. 27, 1982). The particular circumstances of Sheehan's alleged insubordination and subsequent discharge, which would necessarily be the focus of her case at trial, are not typical of the class claims and therefore make her an inadequate representative of the class. *Armour v. Anniston*, 89 F.R.D. 331, 332 (N.D.Ala.1980), *aff'd* 654 F.2d 382 (5th Cir. 1981); *Nelson v. Mustian*, 502 F.Supp. 698, 704 (N.D.Fla.1980). *See also Patterson v. General Motors Corp.*, 631 F.2d 476, 481 (7th Cir.1980), *cert. denied*, 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981) (the named plaintiff was not a proper class representative where his claims were subject to a unique defense).

### 3. *Kayhan Hellriegel*

Hellriegel was hired as a billing clerk in Courier's Chicago terminal in 1969. In 1970, she joined the staff of Courier's midwestern vice president, as regional billing clerk. Hellriegel left Courier's employ in 1972 to accompany her husband to Canada, but returned to the company in 1974 as regional administrative manager. In January 1975, she was transferred, at her request, to a marketing representative (i.e., salesperson) position. Hellriegel became the senior district manager of the Chicago terminal in October 1975, and her title was changed to regional manager in 1976. She was promoted to senior regional manager in 1978. Defendants' Memorandum at 13–14.

When Hellriegel returned to Courier in 1974, she earned a salary of $12,000 per year. In January 1981, three months be-

fore her resignation from the company, Hellreigel's base salary was increased to approximately $40,500 per year, the fourth highest base salary among the 23 senior regional managers at Courier. In 1980, her last full year of employment at Courier, Hellriegel's base salary was the fourth highest among the 25 senior regional managers, and her total compensation (base salary plus the previous year's bonus) was the second highest among all senior regional managers and terminal managers. McMahon Aff. ¶¶ 7, 15, 21.

On or about November 1980, there was a vacancy in the position of Vice President for the Midwest Division of Courier. Hellriegel applied for that position upon the recommendation of her direct supervisor. Hellriegel alleges that she was denied the promotion to the position because she refused the sexual advances of the senior official making the selection. Vladeck Aff. ¶ 17. She further alleges that, after she reported the incident to her direct supervisor, she began to "receive great numbers of memoranda complaining of her work performance and was subjected to petty harassment, ... her management responsibilities were reduced and subordinates were instructed to report to other managers." Vladeck Aff. ¶ 18. Hellriegel claims that she felt compelled to resign her position because of the harassment.

For the same reasons as discussed with respect to Henoch and Sheehan, Hellriegel is also an inappropriate class representative for claims of discrimination in promotion, compensation and other related terms and conditions of employment. Hellriegel, a high level managerial employee, was allegedly discriminated against in the denial of a promotion to an even higher level position as an officer of Courier. Her promotion claim, her experiences as a senior managerial official, and her success in achieving that position are hardly typical of the claims of low level employees included in the purported class of all female exempt employees. See the discussion in Section III, B.1, *supra.* Indeed, Hellriegel's employment history at Courier runs contrary to many of the class claims. She was not restricted to a "staff" position; she was employed in a "line" position at the Chicago terminal. She was not kept in a lower level position; she rose rapidly to a senior managerial position. Hellriegel was also one of the highest paid senior regional managers at Courier. While the salary statistics alone are not dispositive of the salary discrimination claim, Hellriegel's relatively high salary indicates that she will face a heavy burden in establishing salary discrimination, and her claim is therefore atypical of the allegedly widespread salary discrimination asserted as a class claim.[12]

12. Hellriegel may also be an inappropriate class representative for members of the purported class who were employed at Courier's Chicago terminal during her tenure as terminal manager. The adequacy of representation requirement of Rule 23(a)(4) has been interpreted as prohibiting the appointment of class representatives who have conflicts of interest with class members. *Falcon,* 457 U.S. at 157–58, n. 13, 102 S.Ct. at 2371 n. 13; *Rossini v. Ogilvy & Mather, Inc.,* 80 F.R.D. 131, 135 (S.D.N.Y.1978). As manager of the Chicago terminal, Hellriegel was responsible for approving promotion decisions and setting salaries for all employees under her supervision. Wolfrum Aff. ¶¶ 8, 37, 38, 48. To the extent that female exempt employees at the Chicago terminal have claims of discrimination in promotion and compensation, Hellriegel, as class representative, would be charged with representing employees who challenge acts that Hellriegel herself ratified in her official capacity as terminal manager. This direct conflict of interest may make Hellriegel an inappropriate representative for members of the purported class who were employed at the Chicago terminal during her tenure as terminal manager. *Cf. Gilchrist v. Bolger,* 89 F.R.D. 402, 408 (S.D.Ga. 1981), *aff'd in pertinent part,* 733 F.2d 1551, 1555 (11th Cir.1984) (nonsupervisory employees cannot represent supervisory employees); *Rowe v. Bailar,* 26 FEP Cases 1145, 1146 n. 5 (D.D.C. 1981) (proposed class that includes some members who supervised other members "raises a question as to differing interests" among class members); *Rossini v. Ogilvy & Mather, Inc.,* 80 F.R.D. 131, 135–36 (S.D.N.Y.1978).

As discussed in note 9, *supra,* this Court does not believe that *Rossini* is controlling with respect to the appropriateness of Henoch and Sheehan as class representatives. The rationale of *Rossini* is applicable, however, to an assessment of Hellriegel's ability to adequately represent employees of the Chicago terminal. In *Rossini,* the court reasoned that a vice president of the defendant corporation could not ade-

■ Hellriegel's claims of sexual harassment and retaliatory treatment do not present issues suitable for class actions. The harassment claim rests on a highly personal and individualized set of facts: Hellriegel's allegation that she was denied a promotion to divisional vice president after she rejected the sexual advances of the official selecting the new vice president. In light of the broad class Hellriegel seeks to represent, it is doubtful that the claim presents common questions of law or fact, or that it is "typical" for Courier to condition promotions on the granting of sexual favors. *See Martin v. Easton Pub. Co.*, 73 F.R.D. 678 (E.D.Pa.1977). Similarly, Hellriegel's claims of retaliatory treatment, which require proof of highly individualized facts, are not suitable for class treatment. See the discussion in Section III, B.1, *supra.*

■ While the above discussion establishes that Hellriegel is not an appropriate representative for the presently proposed class of all female exempt employees, I must reject defendants' contention that Hellriegel is inherently unsuitable as a class representative because her credibility is allegedly vulnerable to attack. The credibility of a witness is a potentially critical issue in any litigation. If an employer could disqualify the representative of a class of his employees by merely raising a collateral attack on the representative's credibility, it is conceivable that no employee could ever qualify as a class representative in a Title VII action. The cases cited by defendants are distinguishable from the

present case and do not support the extreme proposition urged by defendants. In both *Panzirer v. Wolf,* 663 F.2d 365, 368 (2d Cir.1981), *vacated as moot,* 459 U.S. 1027, 103 S.Ct. 434, 74 L.Ed.2d 594 (1982) and *Kline v. Wolf,* 88 F.R.D. 696 (S.D.N.Y. 1981), *aff'd in pertinent part,* 702 F.2d 400 (2d Cir.1983), credibility questions were raised as to the class representatives' accounts of events that were central to the class representatives' substantive claims.[13] In the present case, defendants challenge Hellriegel's credibility through alleged incidents that are collateral to the issues in this Title VII litigation. See Defendants' Memorandum at 74–76. These credibility questions may present issues for trial, but do not render Hellriegel inherently unfit to serve as a representative of an otherwise appropriate class.

## IV. CONCLUSIONS

For the reasons discussed above, it would be improper to certify a class in this action of all female exempt employees of Courier. A narrower class of upper level employees may be appropriate for certification, *see Lo Re v. Chase Manhattan Corp.,* 431 F.Supp. 189, 197–98 (S.D.N.Y.1977), but the plaintiffs have not articulated any basis for defining such a class. Furthermore, the plaintiffs have failed to make an adequate showing of the existence of a class of aggrieved employees. Plaintiffs' motion for certification of a class of all female exempt employees of Courier is, therefore, denied.

---

quately represent a class of female employees because the vice president's duties to the corporation, as an officer, included assuring compliance with "proper personnel policies and lawful hiring and promotion practices." 80 F.R.D. at 135. Hellriegel was similarly responsible for overseeing Courier's compensation and promotion practices at the Chicago terminal. She therefore cannot adequately represent persons who claim that they were adversely affected by the implementation of these practices.

**13.** *Panzirer* and *Kline* were class actions, brought under the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.,* challenging the same allegedly false and misleading statements contained in a corporation's annual reports. In both cases, the credibility questions concerned the class representatives' assertions that they had relied on the allegedly misleading statements. "Reliance" was a critical element in both of the representatives' substantive claims.

In light of the conclusion that the named plaintiffs cannot be certified as representatives of the proposed class, it is not necessary to decide whether the class must be limited to the offices or areas where the named plaintiffs worked, or whether the class should include future employees who were not employed by Courier at the time of certification.